[Civ. No. 22355.   First Dist., Div. Three.   Dec. 3, 1965.]

EICHLER HOMES, INC., Plaintiff and Respondent, v. UNDERWRITERS AT LLOYD'S, LONDON, Defendant and Appellant.

Wallace, Garrison, Pascoe, Norton & Ray and William R. Ray for Defendant and Appellant.

Adams, Freidenrich & Ware and Leonard Ware for Plaintiff and Respondent.

SALSMAN, J.—Respondent, Eichler Homes, Inc., a corporation, brought this action against Underwriters at Lloyd's, London, seeking a determination of respondent's rights under various certificates of insurance issued by the underwriters.[1] The trial court entered judgment declaring that the underwriters were obligated to defend certain

---

[1]The complaint was answered by certain individuals and one corporation as subscribers to the policy of insurance represented by the various certificates issued to respondent. For convenience, however, appellants are referred to in the singular throughout this opinion.

actions brought by third parties against respondent, and were further liable for attorney's fees, court costs and expenses incurred by respondent because of failure to accept defense of the claims made against respondent. The principal issue on appeal is whether the trial court was correct in its conclusion that appellant was obligated to defend the suits brought by third parties. Appellant also contends that respondent failed to comply with the notice provisions of the policy. From our review of the record and the applicable law we conclude that the judgment of the trial court was correct and must be affirmed.

Respondent is in the business of building and selling homes. It procured several certificates of insurance from appellant. The scope of coverage of all the certificates was identical. They provided: "1. COVERAGE. From and against all loss which the Assured may sustain or incur by reason of or in consequence of: (A) Any and all liability imposed by law against the Assured for loss of or damage to or destruction of property of others (including but not limited to, damage resulting from loss of use of property damaged or destroyed and all other indirect and consequential damage for which legal liability exists in connection with such damage to or destruction of property of others) sustained or alleged to have been sustained during the currency of this Certificate and arising from any cause whatsoever out of the operations, activities, work and/or business of the Assured in the United States of America. . . ." The certificates also contained a clause by which appellant agreed to defend ". . . all claims or suits for such injury or damage for which the Assured is, or is alleged to be liable. . . ."

The relevant exclusions in the certificates stated: "EXCLUSIONS. THIS CERTIFICATE DOES NOT COVER LIABILITY. . . . (D) For Claims made against the Assured—(1) For repairing or replacing any defective product or products manufactured, sold or supplied by the Assured or any defective part or parts thereof nor for the cost of such repair or replacement or (2) For the loss of use of any such defective product or products or part or parts thereof or (3) For damage to that particular part of any property upon which the Assured is or has been working caused by the faulty manner in which the work has been performed."

The notice of loss provision in each certificate was the same. It read, in part: "As soon as reasonably possible after

the occurrence of every accident or loss coming under the conditions of this Certificate the Assured shall give to the undersigned, on behalf of Underwriters, written notice thereof with the fullest information obtainable at the time.''

After issuance of appellant's certificates, and while the insurance was in force, several owners of residences constructed and sold by respondent made claims for damages resulting from the rupture and failure of their radiant heating systems. Numerous suits were filed based on these claims. Defense of these actions was tendered to appellant and rejected on the ground that the claims presented were excluded by the provisions of the certificates, although respondent was advised by appellant that certain of the claims for damage to personal property, such as furniture, rugs, drapes, etc., might come within coverage of the insurance, subject to the deductible provisions of the certificates. However, no defense to any of the actions here involved was provided, and as a result respondent expended $7,823.60 for court costs, attorney's fees and expenses in defending these claims.

The trial court determined that appellant was obligated to defend nine separate actions brought against respondent. Although many parties are named as plaintiffs in the several complaints, for simplicity each action is here referred to only by the name of the party first named in the complaint as a plaintiff. The nine actions are those of Dennis Mann, David Kriegler, Harold R. La Bonte, Jr., Charles E. Armstrong, Karl Bach, Birchall W. Smith, Bernard Feshbach, Saul W. Chaikin, and Steven W. Bauer.

The critical allegations of the several complaints are stated below:

A. *The Mann Complaint*

''. . . that as a proximate result [of the carelessly and negligently installed system] . . . each and every plaintiff hereinabove referred to sustained *damage to his home* and to said radiant heating system.''

In paragraph X of their first cause of action: ''That as a proximate result of the negligence and carelessness of defendants . . . plaintiffs have sustained damages as follows: . . . (b) that leakage from deteriorating pipes which comprise said radiant heating system has or will, unless completely replaced, *damage the real property, improve-*

*ments, appliances and furnishings in an undetermined amount; (c) the market value of their home has been or will be impaired.*'' (Italics added.)

B. *The Kriegler Complaint*

''. . . erection and construction of said dwelling was done in so unskillful, careless and negligent a manner and of such unsuitable materials that . . . the radiant heating system in said dwelling *leaked and discharged water and fluids, causing structural and other damage to said dwelling and making said dwelling entirely untenantable.*'' (Italics added.)

C. *The La Bonte Complaint*

''. . . that as a direct and proximate result of the . . . negligence, carelessness and recklessness of Defendants . . . said radiant heating system was *caused to and did discharge water on, in and about the house of Plaintiffs causing damage thereto* and rendering said premises untenantable. . . .'' (Italics added.)

D. *The Armstrong Complaint*

''As a further proximate result of the said conduct of the defendants, the *value of the building . . . has decreased* in the approximate amount of $3,000 to plaintiff's further damage. . . .'' In paragraph VII plaintiff continues: ''As a further proximate result of said conduct of the defendants, and each of them, the plaintiff suffered . . . minor *damage to furniture and fixtures. . . .*'' (Italics added.)

E. *The Smith Complaint*

The allegations made in this action are identical to those stated in the La Bonte complaint, *supra.*

F. *The Chaikin Complaint*

''. . . as a result of the breach of . . . warranties, . . . the plaintiff sustained damage *to his home* . . . in a total amount of $3,283.31.'' In a second cause of action, the plaintiff alleged that ''as a proximate result of the abovementioned negligence, plaintiff's property was injured and damaged . . . as follows: the radiant heating system failed, damaging the floors, heating system, together with its component parts, and *other parts of plaintiff's home,* all in the amount of $3,283.31, including loss of use of $355.53.'' (Italics added.)

## G. *The Bauer Complaint*

"That as a direct and proximate result of said breach *plaintiffs' unit together with certain appurtenances thereto and certain personal possessions of the plaintiffs located in and about plaintiffs' unit were damaged and depreciated* and plaintiffs were required to and did expend the sum of $799.93 to repair the same; . . ." (Italics added.)

## H. *The Feshbach Complaint*

"That as a direct and proximate result of the unskillfulness, carelessness and negligence of defendants, . . . *plaintiffs were required to have the said house repaired*; that the reasonable value of the emergency service, emergency repairs and final repairs necessitated to said house by reason of the foregoing was the sum of $5,634.86 to plaintiffs' damage in said sum. That as a further, direct and proximate result of said unskillfulness, carelessness and negligence of defendants . . . plaintiffs lost the occupancy and use of said house and were required to incur expenses for themselves and their family for heat, shelter, cooking facilities, for moving and removing their furniture, and for miscellaneous items to plaintiffs' further damage in the sum of $1,625.00." In a second cause of action for breach of warranty Feshbach alleged "That on or about December 1, 1960, as a result of . . . the unsuitable materials used . . . the radiant heating system in said house leaked and discharged water and fluids, *causing structural and other damage to said house and making said house entirely untenantable.*" (Italics added.)

## I. *The Bach Complaint*

This complaint alleged damages as a result of breach of express and implied warranties relating to the radiant heating system. In paragraph IV of the first cause of action plaintiff alleged: "The heating system developed numerous leaks, and large portions of the *floor had to be torn up in order to repair the same.*" (Italics added.)

We are not concerned with any obligation appellant may ultimately have to indemnify respondent in the event that some or all of the claimants here involved are successful in their actions. The question here is whether on our record appellant is under a duty to defend respondent against the third party claims recited above.

■ The duty to defend is, of course, broader than the duty to indemnify. (*Karpe* v. *Great American Indem. Co.,* 190 Cal.App.2d 226, 234 [11 Cal.Rptr. 908].) ■ Where there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer. (*Ritchie* v. *Anchor Casualty Co.,* 135 Cal.App.2d 245, 251 [286 P.2d 1000]; *Fireman's Fund Ins. Co.* v. *Chasson,* 207 Cal.App.2d 801, 805 [24 Cal.Rptr. 726].) ■ The insurer's obligation to defend must be measured by the terms of the insurance policy and the pleading of the claimant who sues the insured. (*Lamb* v. *Belt Casualty Co.,* 3 Cal.App.2d 624, 630 [40 P.2d 311]; *Ritchie* v. *Anchor Casualty Co., supra,* 135 Cal.App.2d 245 at p. 250.) If the allegations of the claimant's complaint would support a recovery upon a risk covered by the insurer's policy, then the duty to defend is present. (*Remmer* v. *Glens Falls Indem. Co.,* 140 Cal.App. 2d 84, 90 [295 P.2d 19, 57 A.L.R.2d 1379]; see also Roos, *The Obligation to Defend and Some Related Problems,* 13 Hastings L.J. 206, 207.) See also, Annotation: Liability Insurer—Duty to Defend, 50 A.L.R.2d 488, 507. We look to the several complaints therefore to see if the claimants have pleaded any facts that could bring their claims within the coverage of appellant's certificates of insurance.

■ The 21 plaintiffs who joined in the Mann complaint each alleged that because of the negligently installed radiant heating system the *market value* of his home had been or would be impaired. This is an allegation of damage entirely unrelated to damage resulting from the cost of repairs and replacement of the defective heating system and hence is a claim for a loss or damage covered by the insurance. ■ That diminution in the market value of the claimants' homes because of the presence of the defective radiant heating system would be a proper measure of damages is supported by *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.,* 51 Cal.2d 558, 565 [334 P.2d 881], where the court quoted at length and with approval from the case of *Hauenstein* v. *Saint Paul-Mercury Indem. Co.,* 242 Minn. 354 [65 N.W.2d 122]. In *Hauenstein,* defective plaster had been applied to a building. The court noted that the presence of the defective plaster on the walls of the building constituted property damage, and declared: ''The measure of damages is the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use,

whichever is the lesser.'' The plaintiffs named in the Mann complaint also alleged damage to real property, improvements, appliances and furnishings. These are clearly claims for damages that are separate and distinct from any claim based upon the cost of repair or replacement of the defective heating system itself. Such claims are clearly within the coverage of appellant's policies.

In like manner, each of the other complaints contains some allegation of damages unrelated to the cost of repair and replacement of the defective heating system. Thus, some claim structural damage to their houses, while others allege a decrease in the value of their homes, or claim damage to furniture, fixtures and appliances. All of these claims appear to come within the coverage extended by the insurance and hence the duty to defend is present. (*Remmer* v. *Glens Falls Indem. Co., supra,* 140 Cal.App.2d 84; see also *Lee* v. *Aetna Casualty & Surety Co.,* 178 F.2d 750.)

We need not treat at length appellant's contention that it did not receive prompt notice of the claims made against respondent. It is undeniable that prompt notice was not given by respondent to appellant. Nevertheless, no prejudice is shown because of respondent's neglect. Moreover, appellant has denied that the certificates of insurance cover the claims made against respondent and has declined a defense on that ground. It is the rule that when the insurer denies coverage it may not insist upon strict compliance with the notice provisions of its policy. (See *Comunale* v. *Traders & General Ins. Co.,* 116 Cal.App.2d 198 [253 P.2d 495, 68 A.L.R.2d 883] ; *Wasson* v. *Atlantic National Ins. Co.* 207 Cal. App.2d 464, 469 [24 Cal.Rptr. 665] ; *Kennedy* v. *American Fid. & Cas. Co.,* 97 Cal.App.2d 315, 316 [217 P.2d 457].)

Appellant makes no complaint concerning the amount of the judgment, but concedes that, if the duty to defend is found, it must reimburse respondent for the court costs and attorney's fees incurred because of its failure to discharge the obligations imposed upon it by its certificates of insurance.

The judgment is affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied December 28, 1965, and appellant's petition for a hearing by the Supreme Court was denied January 26, 1966.