[No. D010888. Fourth Dist., Div. One. Nov. 22, 1989.]

STATE FARM FIRE AND CASUALTY COMPANY et al.,
Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
AEGEA HOMEOWNERS ASSOCIATION, INC., Real Party in
Interest.

## COUNSEL

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Martina A. Silas, Anthony E. Shafton and Bruce M. Warren for Petitioners.

No appearance for Respondent.

Frega & Tiffany and David W. Tiffany for Real Party in Interest.

## OPINION

**KREMER, P. J.**—Petitioners State Farm Fire and Casualty Company and State Farm adjuster Don Dennison (together State Farm) seek mandate directing the superior court to vacate its ruling denying State Farm's motion for summary judgment on Aegea Homeowners Association, Inc.'s (Aegea) complaint for breach of the duty of good faith and fair dealing, breach of statutory duties and breach of contract. We conclude summary judgment was improperly denied because State Farm's insurance policy unambiguously excluded coverage for the losses involved here.

### FACTS

In 1978, Aegea purchased an insurance policy from State Farm for its condominium complex in Oceanside, California. The policy generally insured "against all risks of direct physical loss." The policy specifically excluded coverage for: "[l]oss caused by . . . inherent or latent defect . . . settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings" unless the loss was caused by a peril not otherwise excluded in which case the ensuing loss was covered; loss caused by "faulty materials or workmanship; unless loss by fire or explosion not otherwise excluded ensues" in which case the ensuing loss was covered and loss caused by the enforcement of construction codes.

The 1982 policy excluded loss caused by inherent vice, latent defect and faulty materials or workmanship "unless loss by fire, smoke . . . , explosion, collapse of a building, glass breakage or water not otherwise excluded ensues, then this policy shall cover only such ensuing loss."

From 1983 through 1986, the policy, in pertinent part, stated: "This policy insures for accidental direct physical loss except as provided in LOSSES NOT INSURED.

". . . . . . . . . . . . . . . . .

"LOSSES NOT INSURED

"1. The Company does not insure loss either consisting of, or directly and immediately caused by, one or more of the following:

". . . . . . . . . . . . . . . . .

"(1) wear and tear, marring or scratching;

"(2) deterioration, inherent vice, latent defect;

". . . . . . . . . . . . . . . . .

"3. The Company does not insure for loss which would not have occurred in the absence of one or more of the following excluded events. The Company does not insure for such loss regardless of whether a peril covered under SECTION 1 – LOSSES INSURED: a) is the cause of the excluded event; or b) is another cause of the loss; or c) acted concurrently or in any sequence with the excluded event to produce the loss:

"a. by enforcement of any ordinance or law regulating the construction, repair or demolition of buildings or structures;

". . . . . . . . . . . . . . . . .

"4. The Company does not insure for loss consisting of one or more of the items below:

"a. conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful, negligent, or without fault;

"b. defect, weakness, inadequacy, fault or unsoundness in: [¶] (1) planning, zoning, development, surveying, siting; [¶] (2) design, specifications, workmanship, construction, grading, compaction; [¶] (3) materials used in construction or repair; or [¶] (4) maintenance; of any property . . . on or off the premises . . . .

"However, the Company does insure for ensuing loss from items a. and b. unless the ensuing loss is itself a Loss Not Insured by this Section."

In June 1986, Aegea made a demand on the policy for $3,186,900 to repair deficiencies in the structures. These deficiencies were allegedly due to building code violations, faulty workmanship and fraud by the builder. They included inadequate fire- and earthquake-proofing.

In June 1987, after State Farm had failed to pay or deny the claim, Aegea sued State Farm for breach of the covenant of good faith and fair dealing, breach of statutory duties and breach of contract. In May 1988, the City of Oceanside, concerned that the Aegea Condominiums "may have structural and life-safety deficiencies which could possibly pose a threat to the safety of the occupants," sent a letter to Aegea noting various deficiencies and required the deficiencies be repaired in a timely manner.

State Farm asserted Aegea's losses were not covered by the policy because the policy specifically excluded recovery for latent defects, faulty workmanship and construction code violations. State Farm brought a motion for summary judgment. Aegea argued the "damages" to the structures were merely a "description of the existing condition of the building" and argued the actual loss was the "diminished value of the building" which was a nonexcluded ensuing loss. The trial court accepted Aegea's reasoning and denied summary judgment, determining there were triable issues "as to the magnitude of this diminution in value" and as "to which elements causing the diminution in value are themselves excluded losses and which are covered consequential results of excluded losses."

## DISCUSSION

The trial court's determination "diminution in value" was an ensuing loss distinct from losses due to latent defects, faulty workmanship and code violations was based on two cases: *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558 [334 P.2d 881] (*Geddes*) and *Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London* (1965) 238 Cal.App.2d 532 [47 Cal.Rptr. 843] (*Eichler*).

In the *Geddes* case, an insurance policy was issued to a seller of aluminum doors. The seller had sold defective doors to a builder who had installed these doors in homes.[1] The builder sued the seller for damages to the doors and other property caused by the defective doors. The seller tendered the defense to its insurance company which refused to defend. The builder obtained a $100,000 judgment against the seller who sought that amount from its insurance company.

The insurance policy in *Geddes* provided the insurance company would pay " 'on behalf of the Insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law or contract because of injury to or destruction of property, including the loss of use thereof, caused by accident.' " (*Geddes, supra,* 51 Cal.2d at p. 562.) The policy did not cover liability for damage to any products sold by the insured after the insured had relinquished possession of the product. (*Ibid.*) The insurance company argued it was not liable because there was no "accident" which caused property damage or destruction and because the policy excluded damage to the doors which had been sold. The Supreme Court held the door failures were unexpected, undesigned and unforeseen and therefore were "accidents" within the meaning of the policy and that the policy covered damages for the diminution of the market value of the houses or the cost of repairing the doors plus the lost use. (*Id.* at pp. 563-565.) The *Geddes* court explained: "It is not disputed that injury to or destruction of the doors themselves was excluded by exclusion (e). Plaintiff contends, however, that both the houses and its business were damaged by the door failures. With respect to the houses its position is supported by *Hauenstein* v. *Saint Paul-Mercury Indem. Co.,* 242 Minn. 354 [65 N.W.2d 122]. In that case the insured sold defective plaster that was used to plaster a house. The plaster shrank and cracked to such an extent that it was of no value and had to be removed so that the walls and ceilings could be replastered with a different material. Injury to the plaster itself was excluded from coverage. The court held, however, that injury to the house had occurred and was covered under a clause identical with Coverage C in the present case. 'No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage. *The measure of damages is the diminution in the market value of the building, or*

---

[1] Among the problem doors were 22 replacement bathroom doors which arrived equipped with chimes and letter drops. (*Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co., supra,* 51 Cal.2d at p. 561.)

*the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is lesser.'* (68 N.W.2d at 125.) In *Volf* v. *Ocean Accident & Guar. Corp.,* 50 Cal.2d 373, . . . a case also involving defective plaster, we distinguished the Hauenstein case on the ground that in the Volf case it was not necessary to remove the defective plaster before replastering the house. In the present case, however, it was necessary to remove the defective doors before they could be replaced and we see no reason for not following the Hauenstein case and permitting recovery for damages to the houses according to the rule stated therein." (*Id.* at pp. 564-565, italics added.)

In the *Eichler* case, homeowners sued a builder for damages caused by the rupture and failure of radiant heating systems. The builder tendered defense to its insurance company which refused to defend. The builder then sought a declaration from the court as to whether the insurance company was required to defend. The builder's insurance policy covered " '[a]ny and all liability imposed by law against the Assured for loss of or damage to or destruction of property of others (including but not limited to, damage resulting from loss of use of property damaged or destroyed and all other indirect and consequential damage for which legal liability exists in connection with such damage to or destruction of property of others) sustained [during the policy period] and arising from any cause whatsoever out of the operations, activities, work and/or business of the Assured in the United States of America. . . .' " (*Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London, supra,* 238 Cal.App.2d 532, 534.) The policy excluded coverage for liability claims against the builder " '(1) For repairing or replacing any defective product or products manufactured, sold or supplied by the Assured or any defective part or parts thereof nor for the cost of such repair or replacement or (2) For the loss of use of any such defective product or products or part or parts thereof or (3) For damage to that particular part of any property upon which the Assured is or has been working caused by the faulty manner in which the work has been performed.' " (*Id.* at p. 534.)

The *Eichler* court, after noting an insurance company's duty to defend is broader than its duty to indemnify (238 Cal.App.2d at p. 538), concluded the insurance company had a duty to defend this case. The court explained: "[The Plaintiff] alleged that because of the negligently installed radiant heating system the *market value* of his home had been or would be impaired. *This is an allegation of damage entirely unrelated to damage resulting from the cost of repairs and replacement of the defective heating system and hence is a claim for a loss or damage covered by the insurance.* That diminution in the market value of the claimants' homes because of the presence of the defective radiant heating system would be a proper measure

of damages is supported by *Geddes* . . . , where the court quoted at length and with approval from the case of *Hauenstein* . . . . In *Hauenstein,* defective plaster had been applied to a building. The court noted that the presence of the defective plaster on the walls of the building constituted property damage, and declared: 'The measure of damages is the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser.' The plaintiffs named in the Mann complaint also alleged damage to real property, improvements, appliances and furnishings. *These are clearly claims for damages that are separate and distinct from any claim based upon the cost of repair or replacement of the defective heating system itself.* Such claims are clearly within the coverage of appellant's policies." (*Id.* at pp. 538-539, first italics in original, remaining italics added.)

Aegea argues the holdings of the *Geddes* and *Eichler* cases support its position that a claim for diminution in the market value of the condominiums is an ensuing loss not excluded by the policy because "diminution in market value" is a loss separate and distinct from any loss based on the cost of repair or replacement of the excluded losses caused by latent defects, faulty workmanship and construction code violations.

Initially, we note the *Geddes* and *Eichler* cases are factually distinguishable, both in the language of the policies and in the issues presented to the courts. In *Geddes,* unlike the case here, the insurance policy covered liability for damages due to "accidents" and the issues presented to the court were whether the door failures were "accidents" and to what extent the damages to other property was covered. In *Eichler,* unlike the case here, the policy covered liability for the loss of or damage to property of others from any cause, excluding only claims for repair or replacement of the defective product and the issue before the court was whether the insurance company had a duty to defend, a duty broader than the duty to indemnify.

Not only do the *Geddes* and *Eichler* cases differ from this case due to differences in policy language and issues presented but also they differ because they involved a different type of insurance. The *Geddes* and *Eichler* cases involved liability insurance while here we have property damage insurance. This is an important distinction. It is critical in determining whether an insurance policy covers a loss when the loss has both a covered and an excluded source. As the Supreme Court has explained: ". . . 'Property insurance . . . is an agreement, a contract, in which the insurer agrees to indemnify the insured in the event that the insured property suffers a covered loss. Coverage, in turn, is commonly provided by reference to causation, e.g., "loss caused by . . ." certain enumerated perils. [¶] The term

"perils" in traditional property insurance parlance refers to fortuitous, active, physical forces such as lightning, wind, and explosion, which bring about the loss. *Thus, the "cause" of loss in the context of a property insurance contract is totally different from that in a liability policy.* This distinction is critical to the resolution of losses involving multiple causes. [¶] Frequently property losses occur which involve more than one peril that might be considered legally significant. If one of the causes (perils) arguably falls within the coverage grant—commonly either because it is specifically insured (as in a named peril policy) or not specifically excepted or excluded (as in an "all risks" policy)—disputes over coverage can arise. The task becomes one of identifying the most important cause of the loss and attributing the loss to that cause.' [Citation.]

"On the other hand, the right to coverage in the third party liability insurance context draws on traditional tort concepts of fault, proximate cause and duty. This liability analysis differs substantially from the coverage analysis in the property insurance context, which draws on the relationship between perils that are either covered or excluded in the contract. In liability insurance, by insuring for personal liability, and agreeing to cover the insured for his own negligence, the insurer agrees to cover the insured for a broader spectrum of risks. In order to further demonstrate the differences between property loss and liability coverage, we compare two sections of a typical homeowner's policy—the all-risk property loss coverage section of the policy in this case and the personal liability section at issue in *Partridge*.

"Each policy section is governed by separate exclusions. For example, the all-risk first party property loss coverage section in this case provides for coverage against 'all risk of physical loss' except: losses 'caused by . . . settling[,] cracking, shrinkage, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings . . . .'

"In comparison, in *Partridge,* 'The coverage clause of the "Personal Liability" section of the "Homeowner's Policy" provides in relevant part: "This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence." . . .' [Citation.] Moreover, '[t]he applicable exclusionary clause reads: "This policy does not apply: 1. Under Coverage E—Personal Liability . . . (a) To Bodily Injury or Property Damage Arising Out of the Ownership, Maintenance, Operation, Use, Loading or Unloading of: . . . (2) Any Motor Vehicle Owned or Operated By, or Rented or Loaned to, any Insured . . . .' "

"As the two provisions cited above illustrate, under the all-risk first party property policy, because generally 'all risk of physical loss' is covered, the exclusions become the limitation on loss coverage. Under the liability portion of the policy, on the other hand, the focus is, at least initially, on the insured's legal obligation to pay for injury or damage arising out of an 'occurrence.'" (*Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406-408 [257 Cal.Rptr. 292, 770 P.2d 704], fn. omitted.)

The *Geddes* and *Eichler* cases relied on by Aegea and the trial court both involved liability insurance and therefore the focus of the cases was whether there had been an occurrence for which the insured was liable. Here, the policy is one for property damage, not liability. The question thus is whether Aegea's losses were caused by a covered peril. The focus is on causation, not tort liability. ██ In deciding that question of causation (whether a peril is covered by a property damage policy), " ' "where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster." [Citations.]' " (*Garvey* v. *State Farm Fire & Casualty Co., supra,* 48 Cal.3d 395, 402, quoting *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 31-32 [27 Cal.Rptr. 689, 377 P.2d 889].) ██ Using this guideline, it becomes apparent there is no dispute that the efficient cause of Aegea's losses was one of the excluded perils, i.e., a latent defect, faulty workmanship or construction code violation; the efficient cause was not "diminution in market value."

"Diminution in market value" is not a "peril" at all; it is a method of measuring damages. As was stated in *Geddes*: " '*The measure of damages* is the diminution in the market value of the building . . . .' " (*Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co., supra,* 51 Cal.2d 558, 565, italics added.) This language from *Geddes* was quoted by the *Eichler* court to support its conclusion the diminution in the market value of the home was a "separate and distinct" loss. (*Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London, supra,* 238 Cal.App.2d 532, 538.) The *Eichler* court stated: "That diminution in the market value of the claimants' homes because of the presence of the defective radiant heating system would be *a proper measure of damages* is supported by *Geddes* . . . ." (*Id.* at p. 538, italics added.) The *Eichler* court's language that an allegation of diminution of market value was "entirely unrelated to damage resulting from the cost of repairs and replacement of the defective heating system" and was "separate and distinct" was not a holding diminution in market value is itself a "peril." These cases were not addressing "perils," they were addressing liability for damage to the defective product itself (e.g., cost of replacing or

repairing the defective product) as opposed to liability for other damage caused by the defective product. These cases held damage to other property could be measured by the repair or replacement cost or by the diminution in value to the entire property caused by the presence of the defective product. Aegea's attempt to substitute "peril" for "liability" in the above formula does not work. Aegea's formula would say there is a "peril" called diminution of market value which is distinct from a "peril" called repair or replacement costs. ■ As the Supreme Court has explained, and as is clear from the policy here, "perils" or "risks" refer to " 'fortuitous, active, physical forces such as lightning, wind, and explosion, which bring about the loss.' " (*Garvey* v. *State Farm Fire & Casualty Co., supra,* 48 Cal.3d 395, 406.) Neither diminution in value nor the cost of repair or replacement are active physical forces—they are not the cause of the damage to the structures; they are the measure of the loss or damage. ■ The policy here states it insures against, "direct physical loss" except when due to certain enumerated causes; diminution of market value is not specifically excluded because it is not a "cause" of loss; it is the measure of a loss caused by something else.

The trial court's ruling, that there were factual issues as to the "magnitude of [the] diminution in value" and as "to which elements causing the diminution in value [were] excluded losses and which [were] covered consequential results of excluded losses," was correct to the extent it recognized there were factual disputes about the amount of Aegea's losses. But the question before the trial court was not whether Aegea had suffered losses (clearly it had) nor the extent of their losses (unresolved) but rather whether the insurance policy covered those losses. There was no factual dispute on this issue; the insurance policy unambiguously excluded coverage.

## DISPOSITION

Let mandate issue directing the superior court to enter summary judgment favoring State Farm against Aegea.

Huffman, J., and Todd, J., concurred.