NEW HAMPSHIRE INSURANCE COM-
PANY, Plaintiff–Counterdefendant–
Appellee.

v.

Albert VIEIRA, and Vieira Drywall and
Taping Company, Inc.,
Defendants–Counterclaimants–Appel-
lants.

No. 89–16291.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 1991.

Decided April 8, 1991.

Stephen J. Kottmeier, Hopkins & Carley, San Jose, Cal., for defendants-counter-claimants-appellants.

Kathleen E. Hegen, Boornazian, Jensen & Garthe, Oakland, Cal., for plaintiff-counterdefendant-appellee.

Before FLETCHER, NORRIS and TROTT, Circuit Judges.

TROTT, Circuit Judge:

New Hampshire Insurance Company ("New Hampshire") sought reimbursement from Albert Vieira and Vieira Drywall ("Vieira") for $300,000 it paid in settlement of a claim against Vieira. The district court found that the loss sustained—diminution of value—was not "property damage" covered under the applicable insurance contract, and granted summary judgment for New Hampshire. We affirm.

## I

A general contractor hired Vieira to install drywall in the rooms and attics of three low-income housing projects. When the projects were completed, an investigation uncovered Vieira's failure (1) to nail the drywall properly to interior walls, using too few nails which were too small, and (2) to install drywall in the attics to prevent fire from spreading. The project owners sued the general contractor, who cross-claimed against Vieira. New Hampshire agreed to pay the general contractor $300,000 on Vieira's behalf, reserving its right to seek reimbursement.

After settlement, the owners installed a heat detection and monitoring system to reduce the increased fire risk caused by Vieira's defective drywall installation in the apartment interiors. The owners also decided to install additional drywall in the attics, which made it necessary to cut numerous holes in the roofs of the buildings. Despite these repairs, Vieira asserts the value of the finished projects actually diminished by $670,000 because of the increased fire risk and the burden of maintaining the electrical fire monitoring system. Vieira argues that this diminution constitutes property damage covered by his insurance contract with New Hampshire.

## II

We review de novo the district court's grant of summary judgment. *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir.1990). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant law. *Danning v. Miller (In re Bullion Reserve)*, 922 F.2d 544, 546 (9th Cir.1991).

## III

The insurance policy requires New Hampshire to pay for property damage, defined as "physical injury" to "tangible property." Pursuant to a work product exclusion, the policy expressly excludes property damage to the drywall installed by Vieira. The parties agree the damage to the drywall is not covered, but dispute whether the reduced value of the buildings is covered under the policy. New Hampshire argues it is not liable because diminished value is not property damage as defined by the policy.

In a comprehensive and well-reasoned order, the district court agreed with New Hampshire, relying on a recent Minnesota Supreme Court opinion, *Federated Mutual Insurance Co. v. Concrete Units*, 363 N.W.2d 751 (Minn.1985). We have scrutinized Judge Peckham's reasoning in this regard and find it to be sound. Accordingly, we adopt his analysis, which follows in his words:

### DIMINUTION OF VALUE AS PROPERTY DAMAGE

The second and more significant issue concerns whether diminution in value constitutes property damage as defined in the policy under California law. As stated above, the New Hampshire policy states that property damage means:

"(1) physical injury to or destruction of tangible property ..., including the loss of use thereof ..., or (2) loss of use of tangi-

ble property which has not been physically injured or destroyed."

In this instance, we must therefore determine if the purported diminution of value in the housing projects due to the defective installation of the drywalling constitutes "physical injury to or destruction of tangible property."

Defendants advance two arguments in support of its contention that diminution in value does constitute property damage as defined in the policy. As stated in its original moving papers, defendants first argue that the courts have found property damage as defined in liability insurance policies to have occurred if a defective component or element causes a diminution in value to the property as a whole. In its supplemental memoranda, defendants make a more refined argument based particularly on *Economy Lumber* [*Company of Oakland, Inc. v. Insurance Company of North America* ] 157 Cal.App.3d [641] 644 [204 Cal.Rptr. 135] (1984), that a sub-contractor has caused property damage if its defective workmanship on an element of a project causes the overall project to diminish in value. In light of a recent restriction in the scope of the policy, we reject these arguments especially in a case such as this where Vieira can point to no physical or tangible damage to property other than that it [was] defectively installed.

To support its first argument, defendants cite three cases, *St. Paul Fire and Marine Insurance Company v. Sears, Roebuck and Co.,* 603 F.2d 780 (9th Cir. 1979), *Eichler Homes v. Underwriters at Lloyd's London,* [238 Cal.App.2d 532] 47 Cal.Rptr. 843 (1965), and *Geddes and Smith, Inc. v. St. Paul Mercury Indemnity Company,* 51 Cal.2d 558, 334 P.2d 881 (1959), that all trace an identical scenario and rely on the same Minnesota Supreme Court decision, *Hauenstein v. St. Paul Mercury Indemnity Co.,* 242 Minn. 354, 65 N.W.2d 122 (Minn.1954). In each, the faulty installation of doors, roofs, or a heating system by a contractor reduces the value of a home by causing substantial damage. After the contractor was sued, the court determined that such diminution

in value constitutes property damage covered by the liability insurance policy issued to the contractor by the insurer. In *Eichler Homes,* for example, the California Supreme Court determined that the decline in market value resulting from the negligently installed heating system constitutes "damage entirely unrelated to damage resulting from the cost of repairs and replacement of the defective heating system and hence is a loss or claim covered by the [liability] insurance." 47 Cal.Rptr. at 847. Like Justice Traynor's opinion in *Geddes,* the *Eichler* court relied on the Minnesota Supreme Court's interpretation of property damage in liability insurance policies in *Hauenstein.* In *Hauenstein,* the contractor used defective plaster in homes that later had to be removed. The court reasoned:

> No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of the building. Although the injury to the walls can be rectified by removal of the defective plaster, nevertheless, the presence of defective plaster on the walls and ceilings reduced the value of the building and constituted property damage.

65 N.W.2d at 125.

Despite the initial attractiveness these cases lend to defendants' argument, it fails to take into account that the insurance companies have since modified the definition of property damage to restrict the scope of coverage and that the Minnesota Supreme Court has found these changes legally significant. The current definition of property damage requires *"physical* injury to or destruction of tangible property ...*, or loss of use of *tangible* property which has not been *physically* injured or destroyed." [emphasis added]. In contrast to the earlier policies, insurance coverage after 1973 requires that physical or tangible property be affected. Each of the cases referred to by defendant including *Hauenstein* involves the pre–1966 definition that does not include the above-high-

lighted language.[1] Although the courts applying California law have not addressed the significance of the amended language,[2] the Minnesota Supreme Court has determined that its prior holding that diminution in value does constitute property damage no longer applies in light of these changes. *Federated Mutual Insurance Co. v. Concrete Units, Inc.*, 363 N.W.2d 751 (Minn. 1985).

In *Federated*, both the general contractor and the owner of the building, an agricultural cooperative constructing a grain elevator, sued a sub-contractor responsible for supplying pre-mixed concrete for losses due to problems experienced with the cement. In contrast to the instant case, the sub-contractor denied any responsibility for the problems. Nonetheless, relying expressly upon the changes in the post–1973 liability insurance policy, the Minnesota Supreme Court held *Hauenstein* obsolete and concluded that the diminution in value of the grain elevator due to the incorporation of the defective concrete did not constitute property damage. It stated:

> Although the "diminution in value" of property caused by incorporation of a defective component product may constitute "injury to ... property" under the pre–1966 revision CGL policy ..., we conclude that "diminution in value" is not property damage "when defined as either *physical* injury to ... tangible *property*" or as "loss of use of tangible property."

363 N.W.2d at 756. In light of the modification of the policy and the *Federated* holding, we conclude that defendant's argument that turns upon the above-cited cases must be rejected.[3]

In its supplemental papers, defendant turns to more recent authority that interprets the newer policy to support the same conclusion: that diminution in value can constitute property damage as defined in the post–1973 policy. *Economy Lumber*, [157 Cal.App.3d 641] 204 Cal.Rptr. 135 (Cal. App. 1 Dist.1984).[4] In *Economy Lumber*,

1. Prior to 1966, the general liability insurance policies reviewed by the California courts provided coverage for "damages because of injury to or destruction of property, including the loss thereof." *Geddes and Smith, Inc. v. St. Paul Mercury Indemnity Company*, [63 Cal.2d 602] 47 Cal.Rptr. 564, 566 [407 P.2d 868] (1965). In at least one instance, the pre–1966 coverage included additional language that further indicated the expansive nature of the policy. The policy reviewed in *Eichler Homes v. Underwriters at Lloyd's London*, [238 Cal.App.2d 532] 47 Cal.Rptr. 843, 844 (1965) provided coverage "for loss of or damage to or destruction of property of others (including but not limited to, damage resulting from loss of use of property damaged or destroyed and all other indirect and consequential damage ...)."

2. In *St. Paul Fire and Marine Insurance v. Coss*, [80 Cal.App.3d 888] 145 Cal.Rptr. 836 (2nd Dist. 1978), the California Appellate Court did not rely upon *Hauenstein* and concluded that the post–1973 liability insurance policy did not cover damage to a home due to the general contractor's defective workmanship. It quoted with approval a Seventh Circuit decision that stated: "We do not think the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes 'property damage' within the meaning of the policy. For example, if an automobile crash results from the failure of a defective tire, the defective component can be said to have caused 'property damage' to the finished product. If, however, some of the tires purchased by the automobile

manufacturer are found to be defective and the manufacturer therefore withdraws its cars from the market, there has not been 'injury to or destruction of tangible property' [as required by the coverage provisions]." 145 Cal.Rptr. at 839 [citations omitted].

3. At hearing, defendant placed special emphasis upon *Sears*. In *Sears*, Sears claimed that its insurance policy covered damages caused when a roofing sub-contractor employed by Sears defectively installed roofing. The Ninth Circuit interpreting California law agreed that the damages fell within the definition of property damage because the repair of the contractor's defective installation would have caused damage to other materials that it did not install. 603 F.2d at 784. As plaintiff notes, however, *Sears* concerned the earlier insurance policy that did not require *physical* injury to *tangible* property. Thus, it is not applicable to the instant case.

4. Defendants also rely on *Missouri Terrazzo v. Iowa National Insurance Co.*, 740 F.2d 647 (8th Cir.1984). In *Missouri Terrazzo*, the Eighth Circuit applying Missouri law found that the diminution in value did constitute property damage under the definition of property damage also at issue in this case. In that proceeding, plaintiff defectively installed the floor of a supermarket that later cracked, settled, and flaked as well as becoming discolored.

Although the case lends support for defendants' position, it is distinguishable because it

the First District Court of Appeal emphasized the distinction between the diminution in value caused by the defective workmanship of general contractors and subcontractors and suggested that the latter should be covered by the definition of property damage even if the sole physical damage that led to the diminution was the sub-contractor's defective product. *Economy Lumber* involved a lumber supplier who provided defectively milled lumber siding to a general contractor. When the general contractor used that siding, the homes he was constructing took on a very unsightly appearance. Relying upon *Hauenstein* and *Geddes*, the court determined that the sub-contractor's product was the lumber siding. Therefore, the court concluded, the diminution in value to the house that occurred as a result of the defective milling was damage to a different product and thus covered under the policy. In doing so, the panel distinguished cases concerning general contractors that required a showing of extensive physical damage.

> In the present case, ... it was claimed that there was property damage other than to the siding itself, the insured's product, in that the eight houses diminished in value. Second, as in those cases, the insured was a supplier, not a contractor.

204 Cal.Rptr. at 140.

Although the *Economy Lumber* distinction between sub-contractors and general contractors supports defendants' argument, their reliance on the case cannot survive stricter scrutiny. First, *Economy Lumber* was decided before *Federated* and relies upon *Hauenstein*. Although the case does involve the post–1973 definition of property damage, it does not address the significance of the modifications in that language. In light of the Minnesota Su-

preme Court's explicit repudiation of its previous holding in *Hauenstein* due to those modifications, it would be suspect to rely upon *Economy Lumber* to support a more expansive interpretation of the property damage definition.

More pointedly, *Economy Lumber* unlike *Federated* did not involve the provision of the policy at issue here. The court in *Economy Lumber* sought to resolve the proper scope of the work product exclusion rather than the definition of property damage. In the work product exclusion context, the critical issue is whether the damage occurred to the insured's product or another's work. The *Economy Lumber* court thus emphasized the difference between general contractor and sub-contractor to demonstrate that the work product exclusion did not preclude recovery by a sub-contractor when his defective workmanship caused damage to the general contractor's product. In contrast, *Federated* involved the definition of property damage. In a situation directly analogous to the instant one, *Federated* concerned a sub-contractor whose allegedly defective workmanship caused a diminution in value to the overall project and claimed that the definition of property damage incorporated such damage. Thus, especially in light of this subsequent pronouncement of the Minnesota Supreme Court, it is clear that *Economy Lumber* does not establish that the new definition of property damage includes diminution of value.

Although we are not bound by the holding of the Minnesota Supreme Court, we see no reason to depart from the California Supreme Court's reliance on that very able body. In light of *Federated*'s express rejection of the sub-contractor's argument, we conclude that diminution in value does not constitute property damage as defined

applies Missouri rather than California law. Moreover, it emphasizes the physical consequences of the installer's defective workmanship that are not present in the instant case. Undeniably, the court held that the diminution in value covered by the policy was solely the difference between the value of the building before and after the injury. 740 F.2d at 650. The court went on to distinguish those cases

where the diminution in value was not due to manifest physical damage, e.g., *St. Paul Fire and Marine Insurance Co. v. Northern Grain Co.*, 365 F.2d 361, 366 (8th Cir.1966) (diminished value of wheat crop caused by sale of wrong type of seed). While such a distinction is not wholly satisfying, it further suggests that the case is not apposite in this instance.

in the policy even if the result of a sub-contractor's work.[5]  As another federal court recently recognized, this conclusion is supported by the plain language of the policy itself as well as sound principles of public policy.  *See, Aetna Casualty and Surety Co. v. McIbs, Inc.*, 684 F.Supp. 246 (D.Nev. 1988) (insured who defectively manufactured molds used to produce concrete blocks may not recover damages paid to co-producer for loss of anticipated profits because such damages not within definition of property damage).  As the *McIbs* court noted, the opposite result would transform a general liability insurance policy into a guarantee or contractual performance bond.  In that event, the insured would not be discouraged from defective workmanship since he or she would recover from the insurer even if the diminution in value to the project arose solely due [to] the defectiveness of its own work.

The diminution in value to the housing projects does not constitute property damage as defined by the policy.  Thus, New Hampshire is not liable for the settlement fees it advanced on Vieira's behalf and is entitled to reimbursement.  We therefore grant plaintiff's motion for summary judgment with regard to defendants Albert Vieira and Vieira Drywall and Taping Company and deny defendant's motion for summary judgment with regard to those two defendants.

■ Although we are generally bound by state court interpretations of state law, if we are convinced by "persuasive data that the highest court of the state would decide otherwise," *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940), we can make our own determination.  In light of the new, narrowed definitions of property damage, we are persuaded that diminution in value is not "physical damage" to "tangible property," and hence is not covered by New Hampshire's policy.  We are also persuaded that the California Supreme Court

would so conclude based on the Minnesota Supreme Court's opinion in *Federated.*

## IV

■ Vieira argues that even if diminution in value is not covered, separate damage caused by cutting holes in the roofs to install drywall in the attics was covered. New Hampshire responds that the nature of repairs cannot convert noncovered damage into covered damage.  We agree with New Hampshire.

Vieira bases his argument on *St. Paul Fire & Marine Ins. Co. v. Sears, Roebuck & Co.*, 603 F.2d 780 (9th Cir.1979), which held that if repair to the insured's product results in damage to another part of the building, that damage is covered.  Vieira argues that under this reasoning, the damage caused by cutting holes in the roofs is property damage covered under the policy. *St. Paul* is factually distinguishable because the repairs in that case required *removing* the defective material.  In the present case, repairing the defective installation required *adding* drywall, not removing it.'  The California Supreme Court acknowledged this distinction in *Geddes*, declining to follow *Volf v. Ocean Accident & Guar. Corp.*, 50 Cal.2d 373, 325 P.2d 987 (1958), and adopting the rule of *Hauenstein*, on the ground that in *Hauenstein* removal of a defective product was required, and in *Volf* no removal was necessary.  *Geddes*, 51 Cal.2d at 565, 334 P.2d 881.

We hold that the nature of the repairs cannot create coverage where none exists. Diminution in value and cost of repair are not two separate harms—they are two different ways of measuring the same harm. *See State Farm Fire & Casualty Co. v. Superior Court*, 215 Cal.App.3d 1435, 1441, 264 Cal.Rptr. 269 (1989) (" 'Diminution in market value' is not a 'peril' at all; it is a method of measuring damages.")  If the harm—Vieira's defective work—is not covered as measured by diminished value, it is not covered as measured by cost of

---

**5.** At hearing, defendant argued that *Economy Lumber*'s reliance upon *Eichler, Geddes,* and *Hauenstein* indicate the continued vitality of

those cases.  For the above reasons, we disagree.

repair. The owner's decision to make repairs which necessitated damaging the roofs years after the settlement does not affect New Hampshire's liability.

## V

■ Vieira also argues that the repairs should be covered under the policy because they are remedial measures designed to diminish the risk of fire. *See Globe Indem. Co. v. People*, 43 Cal.App.3d 745, 118 Cal.Rptr. 75 (1974); *Intel Corp. v. Hartford Accident & Indem.*, 692 F.Supp. 1171 (N.D.Cal.1988). The *Globe* and *Intel* courts held that measures to mitigate potential harm were covered, since the harm itself would have been covered. The district court rejected this argument, noting that the harm in the present case, diminution of value, would not have been covered. Since the damage was not covered, there is no basis for covering the remedial measures.

On appeal, Vieira argues that the district court erred in construing the potential harm as the diminution in value. He claims the potential harm was fire damage. Vieira asserts that since fire damage would be covered under the policy, the remedial measures to prevent fire damage should be covered under *Globe* and *Intel.*

The California Supreme Court recently rejected similar reasoning in *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 274 Cal. Rptr. 820, 799 P.2d 1253 (1990), holding that preventative measures—undertaken to prevent the spilling of hazardous wastes—were not covered by the insurance policy because they were not property damage. *Id.* at 843, 274 Cal.Rptr. 820, 799 P.2d 1253. In the present case, awarding the cost of preventive measures to Vieira would transform the liability insurance to a performance bond, requiring New Hampshire to assume the cost of making good on Vieira's duty to perform under the contract. Vieira was hired to install drywall to reduce risk of fire. He failed to do so. To require New Hampshire to now assume this cost would be to reward Vieira for his poor workmanship.

## VI

■ The district court awarded $23,-830.21 to New Hampshire for its costs in defending the underlying action. Vieira argues New Hampshire had a duty to defend the action because the complaint alleged damage potentially covered under the policy. New Hampshire asserts that this issue is unreviewable because Vieira did not raise it in a timely fashion below.

Although as a general rule this court will not consider issues not raised in the district court, we can conduct appellate review of an issue which is " 'purely one of law and either does not affect or rely upon the factual record developed by the parties.' " *Telco Leasing v. Transwestern Title Co.*, 630 F.2d 691, 693 (9th Cir.1980) (quoting *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir.1978)). Because the question of whether New Hampshire had a duty to defend is a purely legal issue which is answered by examining the complaint filed against Vieira, we find it appropriate for review.

■ Vieira argues that even if New Hampshire is not liable under the policy, it still cannot recover attorney's fees for defending the underlying action because New Hampshire's duty to defend is broader than its duty under the policy to cover damage. *See State Farm*, 215 Cal.App.3d at 1441, 264 Cal.Rptr. 269 (citing *Eichler Homes v. Underwriters at Lloyd's, London*, 238 Cal. App.2d 532, 538, 47 Cal.Rptr. 843 (1965)). The claimant need only assert a cause of action against the insured that " '*potentially* seeks damages within the coverage of the policy' to trigger the insurer's obligation to defend." *Gulf Ins. Co. v. L.A. Effects Group*, 827 F.2d 574, 576 (9th Cir. 1987) (emphasis in original) (quotation omitted).

The general contractor's cross-complaint against Vieira alleged negligence and breach of warranty. Vieira's negligent acts would have been covered under the contract unless they fell within one of the exclusions. Certainly if Vieira had negligently damaged another part of the housing projects, he would have been covered

under New Hampshire's policy. Because the complaint alleged damages potentially within the coverage of the policy, New Hampshire had a duty to defend the action. The district court erred in awarding fees to New Hampshire.

## VII

The district court's grant of summary judgment in favor of New Hampshire on the issue of liability is AFFIRMED. The grant of attorney's fees to New Hampshire is REVERSED, and the case is REMANDED for entry of an order consistent with this disposition.

The parties shall bear their own costs on appeal.