Filed 3/7/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID DOYLE, | |
| Plaintiff and Appellant, | G054197 |
| v. | (Super. Ct. No. 30-2015-00767635) |
| FIREMAN'S FUND INSURANCE COMPANY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Thierry Patrick Colaw, Judge. Affirmed.

Abelson Herron Halpern, Marc D. Halpern and Douglas J. Brown for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Marc J. Feldman and Karin Dougan Vogel for Defendant and Respondent.

\*          \*          \*

"O thou invisible spirit of wine, if thou hast no name to be known by, let us call thee devil!" (Shakespeare, Othello, act II, scene 3.)

Yea verily, we are presented with a most unfortunate tale of a villainous wine dealer who sold millions of dollars' worth of counterfeit wine to an unsuspecting wine collector. When the wine collector discovered the fraud, he filed an insurance claim based on his "Valuable Possessions" property insurance policy. The insurance company denied the claim. The wine collector sued for breach of contract. The trial court ruled in favor of the insurance company, sustaining its demurrer.

We agreeth with the trial court; the wine collector suffered a financial loss, but there was no *loss to property* that was covered by the *property insurance* policy. In other words, the wine collector is stuck with the devil wine without recompense. A Shakespearean tragedy, to be sure.


I

FACTS AND PROCEDURAL BACKGROUND

David Doyle is a collector of rare, vintage wine. His "world-class" wine collection is housed in a wine storage facility in Laguna Beach. Starting in 2007, Doyle insured his wine collection against loss or damage by purchasing a "Valuable Possessions" policy from Fireman's Fund Insurance Company (Fireman's Fund), with a blanket policy limit of $19 million. Doyle went on to purchase eight annual renewal policies.[1]

During the eight years that Doyle was insured under the policy, he purchased close to $18 million of purportedly rare, vintage wine from Rudy Kurniawan. But a law enforcement investigation revealed that for many years Kurniawan had apparently been filling empty wine bottles with his own wine blend and had been affixing

---

[1] The language in each policy essentially remained the same; for the sake of clarity, we will refer to the "policy" in the singular form throughout this opinion.

2

counterfeit labels to the bottles. In 2013, Kurniawan was convicted of fraud and was sent to prison for 10 years.

In 2014, Doyle filed a claim seeking reimbursement from Fireman's Fund "for the losses he sustained" due to Kurniawan's fraud. After gathering documentation and conducting an investigation, Fireman's Fund denied all coverage stating there was no covered "loss" under the policy.

In 2015, Doyle filed a first amended complaint alleging breach of contract, among other causes of action. As relevant here, Fireman's Fund filed a demurrer, which the trial court sustained without leave to amend.[2] Doyle appeals.

II

DISCUSSION

The "PERILS INSURED AGAINST" provision of the Firearm's Fund insurance policy Doyle purchased provides: "We insure for direct and accidental loss or damage *to covered property . . . .*" (Italics added.)

In this appeal, Doyle argues that the policy provides "broad protection against all insurable risks, which include crime-related losses to [his] investment whether anything physical happened to the wine or not." (Italics omitted.) Conversely, Firearm's Fund argues that no "loss or damage *to covered property*" occurred; that is, "the wine is in the exact same condition now that it was in when [Doyle] first insured it."

Based on the nature of property insurance and the plain language of the policy, we agree with Fireman's Fund; Doyle indeed suffered a financial loss, but there was no loss to his covered property.

---

[2] The parties settled a related claim regarding "a mutual mistake of fact as to the value of what was being insured, and a corresponding overpayment of premiums . . . ."

3

*A. Standard of Review*

In an appeal from a judgment on a demurrer without leave to amend, we "accept as true the facts as alleged in the complaint construed in favor of the pleader, and determine whether those allegations state a cause of action." (*Fremont Comp. Ins. Co. v. Sierra Pine* (2004) 121 Cal.App.4th 389, 393.)

"'In general, interpretation of an insurance policy is a question of law and is reviewed de novo under settled rules of contract interpretation.'" (*Hovannisian v. First American Title Ins. Co.* (2017) 14 Cal.App.5th 420, 430.) Fundamentally, we construe a contract "to give effect to the mutual intention of the parties" at the time of its formation. (Civ. Code, § 1636.) We infer the parties' intent, if possible, solely from the written provisions of the contract. (Civ. Code, § 1639.) We interpret these provisions, "in their ordinary and popular sense, . . . unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." (Civ. Code, § 1644.)

"An insurance policy provision is ambiguous when it is capable of two or more constructions, both of which are *reasonable*. [Citation.]" (*Jordan v. Allstate Ins. Co*. (2004) 116 Cal.App.4th 1206, 1214.) "[A]lthough parol evidence 'may be admissible to determine whether the terms of a contract are ambiguous [citation], it is not admissible if it contradicts a clear and explicit policy provision [citation].'" (*George v. Automobile Club of Southern California.* (2011) 201 Cal.App.4th 1112, 1121.)

*B. The Valuable Possessions Insurance Policy*

The Fireman's Fund insurance policy at issue in this case is a preprinted "Scheduled Valuable Possessions Policy," which covers various items of valuable personal property such as jewelry, furs, and fine art. The policy also covers: "'Collectibles', meaning wine, sports cards, dolls, model trains, and other private collections of rare, unique or novel items of personal interest including memorabilia." The "PERILS INSURED AGAINST" provision of the policy provides: "We insure for

4

direct and accidental loss or damage to covered property caused by an 'occurrence.'" The policy defines an "'occurrence'" as "a loss to covered property which occurs during the policy period . . . and is caused by one or more perils we insure against." The policy does not define the term "loss."

The "EXCLUSIONS – LOSS NOT INSURED," portion of the policy lists various exclusions such as, "Wear and tear, gradual deterioration, latent defect or inherent vice[.]" The policy also provides that: "If wine is covered . . . , the following exclusions also apply: [¶] a. Failure to use reasonable care to maintain all heating, cooling or humidity control equipment in proper operating condition. . . ; [¶] b. Improper handling or storage; [¶] c. Consumption; or [¶] d. Normal shortage, leakage, spillage, evaporation, dissipation, spoilage or deterioration, all usual and customary to wine."

C. *Legal Analysis*

"Property insurance is a type of insurance with its own historical development, and which is now available to cover 'just about any type of property that exists in the modern world.' [Citation.] [¶] The self-evident point is that property insurance is insurance of *property*. While in the modern setting 'just about any type of property' may be insured, the insured item must nonetheless be property." (*Simon Marketing, Inc. v. Gulf Ins. Co.* (2007) 149 Cal.App.4th 616, 622-623, fn. omitted.)

"Given this premise, the threshold requirement for recovery under a contract of property insurance is that the insured property has sustained physical loss or damage. [Citation.] 'The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer where the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'" (*Simon Marketing v. Gulf Ins. Co.*, *supra*, 149 Cal.App.4th at pp. 622-623.)

Here, Doyle has not pleaded a breach of contract claim that can be proven at trial because nothing happened *to the covered property* (i.e., the wine that Doyle purchased and insured). That is, the plain language of the "PERILS INSURED AGAINST" provision makes it clear that Fireman's Fund was insuring against "direct and accidental loss . . . *to covered property*[.]" The word "loss" modifies the subject phrase "covered property" by way of the preposition "to." Fireman's Fund was insuring against any losses *to* the wine; Fireman's Fund was not insuring against any losses *to* Doyle's finances or *to* his unrealized expectations as to the value of the wine he had purchased. (See *California Fair Plan Assn. v. Garnes* (2017) 11 Cal.App.5th 1276, 1288-1289 [the phrase "total loss *to* a structure" in a fire insurance statute "unmistakably contemplates a quantum of physical damage . . . and excludes the sort of economic analysis employed by" the plaintiff].)

When Doyle purchased the wine from Kurniawan it was counterfeit. The wine remained counterfeit (and essentially worthless) throughout the entire coverage period of the policy. Perhaps Doyle has a valid claim against Kurniawan for fraud. However, Doyle cannot reasonably expect his Fireman's Fund "Valuable Possessions" property insurance policy to reimburse him for his multiple purchases of wine from Kurniawan, which was essentially valueless at the time of purchase.

Indeed, when it comes to property insurance, diminution in value is not a covered peril, it is a measure of a loss. (*State Farm Fire and Casualty Co. v. Superior Court* (1989) 215 Cal.App.3d 1435, 1444 (*State Farm*).) In *State Farm*, a homeowner's association (HOA) had purchased insurance to cover its condominium complex. The HOA filed a claim when it discovered latent deficiencies "allegedly due to building code violations, faulty workmanship and fraud by the builder[,]" even though "the policy specifically excluded recovery for latent defects, faulty workmanship and construction code violations." (*Id.* at p. 1439.) After the insurance company predictably denied the claim, the HOA sued, arguing that "the actual loss was the 'diminished value of the

6

building' which was a nonexcluded ensuing loss." (*Ibid*.) The appellate court disagreed. "'Diminution in market value' is not a 'peril' at all; it is a method of measuring damages." (*Id*. at p. 1444.)

Here, similar to *State Farm*, Doyle suffered a diminution in value—he lost the money he had invested in his wine collection—because of the fraud committed by Kurniawan. But Doyle's financial loss was not a covered peril, it is simply a measure of his damages. Doyle contends that unlike the property insurance policy in *State Farm*, the Fireman's Fund property insurance policy does not limit itself to *physical* damages. But given the fundamental nature of property insurance, the policy Doyle purchased only insured him against potential harms to the wine itself, such as fire, theft, or abnormal spoilage; Doyle did not insure himself against any potential financial losses. Doyle did not buy a *provenance* insurance policy; Doyle bought a *property* insurance policy.

Doyle argues that the policy he purchased does not list fraud as an exclusion; therefore, he contends that the fraud committed by Kurniawan is covered under the policy. The problem with this argument is that: "The burden is on the insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage. [Citations.] And, once an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1188.) Here, Doyle has failed to establish that any type of financial loss, including fraud, comes within the scope of the property insurance policy he purchased. That the policy does not specifically list fraud as an exclusion is irrelevant.

Moreover, we are making our decision based on the clear and explicit language in the covered perils provision of the insurance policy; that is, we do not find the contract terms to be ambiguous. Thus, we do not consider Doyle's expectations at the time of contracting based on extrinsic parol evidence (e.g., Fireman's Fund's marketing materials, Doyle's homeowner's policy, etc.). (See *Elliott v. Geico Indemnity Co.* (2014)

7

231 Cal.App.4th 789, 801-802 ["'Although parol evidence may be admissible to determine whether the terms of a contract are ambiguous [citation], it is not admissible if it contradicts a clear and explicit policy provision'"].)

Finally, we can merely offereth to Doyle this small piece of wisdom from the Bard of Avon: "The robbed that smiles steals something from the thief." (Shakespeare, Othello, act I, scene 3.)

### III
### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Respondent.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

FYBEL, J.