848 P.2d 1079

**HINKLE, COX, EATON, COFFIELD & HENSLEY, a partnership, Plaintiff–Appellee, and Cross–Appellant,**

v.

**CADLE COMPANY OF OHIO, INC., Defendant–Appellant, and Cross–Appellee.**

No. 20332.

Supreme Court of New Mexico.

Feb. 23, 1993.

Cynthia A. Fry, Albuquerque, for appellant.

Hinkle, Cox, Eaton, Coffield & Hensley, Stuart D. Shanor and Gregory S. Wheeler, Roswell, for appellee.

## OPINION

MONTGOMERY, Justice.

This is an appeal and a cross-appeal from a judgment in favor of the plaintiff, a law firm, awarding it the amount sought in its complaint as fees allegedly earned in representing the defendant over a period of time (plus prejudgment interest, costs, and attorney's fees), and dismissing the defendant's counterclaims. Defendant, Cadle Company of Ohio, Inc. ("Cadle"),[1] challenges the trial court's orders granting summary judgment to the plaintiff, Hinkle, Cox, Eaton, Coffield & Hensley ("Hinkle"), on Hinkle's complaint and on Cadle's counterclaims to recover amounts previously paid during the course of Hinkle's previous representation. By its cross-appeal, Hinkle attacks the trial court's refusal to award, as part of Hinkle's claim for attorney's fees as the prevailing party in the present litigation, amounts representing the value of services performed by a Hinkle associate. The case presents issues on allocation of the burden of establishing reasonableness in connection with a claim for attorney's fees allegedly earned in the past by a lawyer or a law firm, the requirements for the defense of "account stated" in resisting a claim by a former client for refund of fees previously paid, recovery of attorney's fees to a prevailing party for work related to the defense of counterclaims, and the requirements for asserting a claim for "in-house" attorney's fees in connection with a claim for attorney's fees recoverable in an action. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS

Cadle is an Ohio corporation engaged in the business of purchasing commercial paper at a discount from the Federal Deposit Insurance Corporation and the Resolution Trust Corporation. Cadle often employs outside legal counsel to assist it in collecting such commercial paper and in liquidating any collateral securing it. In 1988 Cadle employed Hinkle to represent it in the collection of amounts due under certain promissory notes.

Cadle and Hinkle did not enter into a written fee agreement to govern Hinkle's fees for its services. Rather, according to Cadle's President, Daniel Cadle, the parties orally agreed that Hinkle would bill Cadle on an hourly basis, based on Hinkle's customary and reasonable hourly rate. Daniel Cadle testified by deposition that Stuart Shanor, a managing and senior partner of Hinkle, told him that the hourly rate would vary, depending on who performed the legal work.

Hinkle began the collection work and sent Cadle monthly invoices for the work performed. From approximately July 1988 to May 1989, Cadle paid Hinkle a total amount of between $26,572.13 and $27,364.54 (the exact amount was disputed). Thereafter, Hinkle continued to send Cadle monthly invoices, but Cadle refused to pay them.

In May 1990 Hinkle sued Cadle, seeking to recover $14,968.64 for unpaid legal services that it allegedly had rendered in collecting or attempting to collect on the promissory notes. Hinkle sought recovery based on theories of open account, account stated, and breach of contract. Cadle answered the complaint, denying that it owed any amounts to Hinkle. Cadle also asserted two counterclaims, seeking recovery of amounts it had already paid for previously rendered legal services. Its counterclaims alleged breach of contract and unfair trade practices.

Subsequently, during discovery, Cadle indicated that it was going to rely on the

1. The correct name of the defendant is "The Cadle Company," not "Cadle Company of Ohio, Inc.". In this opinion we shall refer to the defendant simply as "Cadle."

testimony of an expert witness, Louis Puccini, to establish that Hinkle's fees were unreasonable. Hinkle therefore sought to depose Puccini before trial. Hinkle attempted to schedule Puccini's deposition, but Cadle repeatedly delayed the deposition because it had not provided Puccini with the necessary documentation to enable him to express an expert opinion. Because of Cadle's delays, the trial court entered an order on August 22, 1991, compelling Puccini's deposition by August 30. Hinkle then deposed Puccini by telephone on August 30; however, Puccini could not express an opinion as to the reasonableness of Hinkle's fees because Puccini still had not received sufficient documentation on which to base an opinion.

Hinkle then moved to dismiss Cadle's counterclaims as a discovery sanction against Cadle. Hinkle alleged that Cadle's failure to provide Puccini with the necessary documentation was willful and deliberate. The trial court denied Hinkle's motion, but did impose an alternative sanction: It struck Puccini as a witness and prohibited Cadle from offering any other expert testimony in the case.

Hinkle next filed two motions for summary judgment, seeking judgment on its complaint and on Cadle's counterclaims. In support of the motion on its complaint, Hinkle submitted monthly invoices it had sent to Cadle and which remained unpaid. The invoices itemized the tasks performed by Hinkle, the attorney who performed each task, the amount of time spent on each task, and the amount billed for each task. The invoices also listed Hinkle's expenses incurred in representing Cadle. Along with the invoices, Hinkle submitted the affidavit of Stuart Shanor, who stated that the invoices represented actual work performed and expenses incurred and that the legal work and expenses were reasonable in amount and necessarily incurred.

Hinkle's other motion for summary judgment, addressed to Cadle's counterclaims, was based on the theory of an account stated. Hinkle asserted that Cadle could not recover amounts it had already paid Hinkle because Cadle had assented to those amounts by paying them without objection.

Cadle responded to Hinkle's motions by submitting affidavits signed by Timothy Taber, Vice President and General Counsel of Cadle. In his affidavit in response to Hinkle's motion on the complaint, Taber stated that since May 1989 he had been primarily responsible for hiring outside counsel for Cadle and that he had reviewed invoices from approximately 100 outside counsel, including four New Mexico firms. He then stated that he was familiar with Hinkle's representation, that he had reviewed Hinkle's invoices, and that Hinkle's legal fees were unreasonable. Taber's affidavit incorporated by reference two of Cadle's answers to Hinkle's discovery interrogatories. In the answers, Cadle listed the items from Hinkle's invoices that Cadle found objectionable and generally objected to "paying for [Hinkle's] legal education" and to being charged for intraoffice conferences and memos, unnecessary research projects, and excessive time allegedly spent on certain procedures.

In his affidavit in response to Hinkle's motion on the counterclaims, Taber again said that Hinkle's legal fees were unreasonable. This affidavit incorporated by reference a portion of Daniel Cadle's deposition, in which he referred to his previous discussions with attorneys at Hinkle, in which he had objected to the amount of Hinkle's bills.

The trial court considered Hinkle's motions at a hearing in October 1991. Initially, the court struck the affidavits of Timothy Taber insofar as they "purport[ed] to assert any expert opinion." The court reasoned that Cadle could not rely on Taber's affidavits because of the court's earlier discovery sanction prohibiting Cadle from relying on any expert opinion and that Taber was in any event incompetent to offer any expert opinions in the case.

The court then granted Hinkle's motions for summary judgment on the complaint and on the issue of account stated. In connection with the summary judgment on the issue of account stated, the court found that Cadle had assented to the charges it had already paid. It stated that "[t]here is uncontradicted testimony of record of the

manifestation of assent by [Cadle] to [Hinkle's] charges which have been paid by [Cadle]." Granting of summary judgment on that issue compelled, and the court accordingly ordered, dismissal of the counterclaims.

In granting Hinkle summary judgment on its complaint, the court found it undisputed that Hinkle had performed legal services for Cadle as set forth in Hinkle's invoices and that the charges remained unpaid. It then stated that "[u]nrebutted expert legal opinion has confirmed that the legal work and expenses as set forth in the various invoices ... were necessarily incurred ... and that said sums are reasonable in amount." Accordingly, the court entered an order granting Hinkle summary judgment on its claim for $14,968.64.

Following entry of this order, Hinkle, as the prevailing party in this action to recover on an open account, requested attorney's fees pursuant to NMSA 1978, Section 39–2–2.1 (Repl.Pamp.1991).[2] Hinkle requested a total amount of $17,093.56, consisting of $4,426.56 for in-house counsel fees and $12,667.00 for fees incurred by its retained counsel. At a hearing in November 1991, the court awarded Hinkle attorney's fees of $12,667.00. The court denied all of Hinkle's in-house fees, stating that it was the court's practice never to allow attorney's fees "when the attorney is doing their own work."

On appeal, Cadle argues that the trial court erred in granting summary judgment on both the complaint and the counterclaims. On its cross-appeal, Hinkle argues that the trial court erred in denying its in-house attorney's fees.

## II. ANALYSIS

### A. *Summary Judgment on Hinkle's Complaint*

Cadle makes two arguments in support of its position that the trial court erred in granting summary judgment on Hinkle's complaint: First, that Hinkle failed to present a prima facie case because it did not establish the reasonableness of its fees;

second, that even if Hinkle did present a prima facie case, Cadle rebutted that prima facie case and raised a genuine issue of fact as to the reasonableness of the fees. We consider each of Cadle's arguments separately.

### 1. *Requirements of a Prima Facie Case*

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party demonstrates that it is entitled to judgment as a matter of law. *Peck v. Title USA Ins. Corp.*, 108 N.M. 30, 32, 766 P.2d 290, 292 (1988). The moving party must first make a prima facie showing of entitlement to summary judgment. *Id.* If a prima facie case is made, the burden shifts to the party opposing summary judgment to demonstrate a genuine issue of material fact. *See id.* Accordingly, when Hinkle moved for summary judgment on its complaint, it had the initial burden of showing that no genuine issues of material fact existed and that it was entitled to judgment as a matter of law.

The first issue debated by the parties is whether Hinkle's burden of showing that it was entitled to judgment as a matter of law required it to demonstrate the reasonableness of its fees. Cadle, citing *Calderon v. Navarette*, 111 N.M. 1, 800 P.2d 1058 (1990), asserts that an attorney seeking to recover on a contract with a client has the burden of proving that its fees are reasonable. *See id.* at 3, 800 P.2d at 1060 ("It is fundamental that the attorney bears the burden of proving the value of the legal services rendered."). Hinkle responds by distinguishing *Calderon*, in which an attorney sought recovery based on quantum meruit, from the present situation, in which Hinkle seeks recovery based on contract. It argues that the attorney in *Calderon*, by suing in quantum meruit, placed the value of his services in issue. In contrast, Hinkle argues that because it is suing in contract, it has not placed the value of its services in issue and therefore should not bear the burden of proof of reasonableness.

**2.** Section 39–2–2.1 provides for allowance to the prevailing party of a reasonable attorney's fee, to be set by the court and taxed and collected as

costs, in any action to recover on an open account.

■ We think that Hinkle bore the burden of establishing the reasonableness of at least part of its fee. As stated above, the fee agreement was not for an agreed amount. While the parties apparently agreed to an hourly rate, they did not agree to the number of hours to be expended. Hinkle had the burden of establishing the reasonableness of the terms not expressly agreed to by the parties, *i.e.*, the burden of showing that the amount of time expended was reasonable and that the time was "fairly and properly used." *See Jacobs v. Holston*, 70 Ohio App.2d 55, 434 N.E.2d 738, 742 (1980) (when attorney and client had agreed to a fee based on a stated hourly rate, attorney seeking to enforce the agreement had burden of proving reasonableness of time expended).

We further believe that Hinkle met its burden of showing reasonableness. Cadle argues that the affidavit of Stuart Shanor, who stated that Hinkle's charges "were reasonable in amount and necessarily incurred," was conclusory and insufficient to establish reasonableness. Cadle asserts that "the attorney must present evidence substantively supporting the reasonableness of the fee."

■ We agree that Shanor's affidavit alone was insufficient to prove reasonableness. However, Cadle virtually ignores the additional "substantive" evidence that Hinkle submitted in support of its motion: the monthly invoices that itemized the tasks performed by Hinkle, the attorney who performed each task, the amount of time expended on each task, and the amount billed for each task. Those invoices, along with Shanor's affidavit, established that Hinkle had performed its claimed legal services and that those services were reasonable in amount. It would be impractical to require Hinkle to present more detailed evidence, as suggested by Cadle, of the skill involved in the various tasks Hinkle performed and the results it obtained. Accordingly, we find that Hinkle presented a prima facie case of the reasonableness of its fees, and that the burden then shifted to Cadle to show the existence of a genuine issue of material fact on this issue.

## 2. Rebutting the Prima Facie Case

As previously noted, Cadle submitted an affidavit by Timothy Taber in response to Hinkle's motion, incorporating by reference two of Cadle's answers to Hinkle's interrogatories. The trial court struck Taber's affidavit insofar as it offered expert opinion and then concluded that "[u]nrebutted expert legal opinion" established that Hinkle's fees were reasonable. The trial court apparently believed that expert testimony was necessary to raise an issue of fact as to the reasonableness or unreasonableness of an attorney's fee. Consequently, not only did it refuse to consider Taber's affidavit insofar as it purported to express expert opinion, but it also refused to consider the affidavit and the answers to interrogatories attached to it as nonexpert testimonial and documentary evidence.

■ The trial court erred to the extent it believed expert testimony is always necessary to create a genuine issue of fact concerning the reasonableness of attorney's fees. As a general rule, *"any one sufficiently familiar"* with the commercial value" of services may testify to the value of those services. 3 John H. Wigmore, *Evidence in Trials at Common Law* § 715, at 52 (rev. ed. 1970); *see also* 2 Stuart M. Speiser, *Attorneys' Fees* § 18:14 (1973) (testimony of expert witness is generally not essential on question of value of legal services). When the issue concerns the value of professional services, such as legal services, some courts hold that only a member of the particular profession is sufficiently familiar; other courts disagree. Wigmore, *supra*, § 715, at 52.

■ Taber was sufficiently familiar with the commercial value of Hinkle's legal services to testify on the alleged unreasonableness of Hinkle's charges. As noted, Taber is the Vice President and General Counsel of Cadle. Taber testified in his affidavit that since 1989 he had reviewed invoices from approximately 100 outside counsel for Cadle, including four New Mexico firms (excluding Hinkle). He also stated that he was familiar with Hinkle's representation of Cadle and had reviewed Hinkle's invoices. This knowledge made Taber

qualified to testify as to the unreasonableness of the fees, notwithstanding the trial court's finding that Taber was not competent to offer *expert* testimony.

We further hold that Taber's affidavit, when considered with the answers to interrogatories, rebutted Hinkle's prima facie case and raised a genuine issue of fact on the reasonableness of the fees. The answers to interrogatories identified the specific charges that Cadle found objectionable and gave various reasons why Cadle objected to those charges. These objections were sufficiently detailed to raise a question of fact concerning the reasonableness of Hinkle's fees. Accordingly, the trial court erred in granting summary judgment to Hinkle on its complaint.

*B. Summary Judgment on Cadle's Counterclaims*

■ The court dismissed Cadle's counterclaims after granting summary judgment to Hinkle on the issue of account stated. The *Restatement of Contracts* defines an account stated as "a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor." Restatement (Second) of Contracts § 282(1) (1979). New Mexico case law similarly defines an account stated as " 'an account balanced, and rendered, with an assent to the balance, express or implied, so that the demand is essentially the same as if a promissory note had been given for the balance.' " *Leonard v. Greenleaf,* 21 N.M. 180, 184, 153 P. 807, 808 (1915) (quoting *Comer v. Way,* 107 Ala. 300, 19 So. 966, 967 (1895)). Once an account stated is established, it operates as an admission by each party that a certain sum of money is due. *See* Restatement (Second) of Contracts § 282(2). Neither party, in the absence of fraud or mistake, can question the correctness of the stated sum. *Leonard,* 21 N.M. at 187, 153 P. at 809 (quoting *Brown & Manzanares Co. v. Gise,* 14 N.M. 282, 287, 91 P. 716, 717 (1907)).

The trial court concluded that Cadle had impliedly assented to the amounts it had previously paid Hinkle by paying those amounts without objection. The court found "uncontradicted testimony of record

of the manifestation of assent by [Cadle] to [Hinkle's] charges which have been paid by [Cadle]." It further found no evidence of fraud or mutual mistake.

Cadle argues that the trial court erred in granting summary judgment because Cadle presented evidence showing that it had not assented to the amounts it had previously paid. Cadle points out that Daniel Cadle met with attorneys at Hinkle to discuss objections to Hinkle's bills. It also relies on Daniel Cadle's testimony that payment of Hinkle's invoices did not necessarily indicate that Cadle had no objections to the bills.

■ Cadle's argument is not persuasive. While Daniel Cadle did testify that he met with attorneys at Hinkle in early 1989 to discuss Cadle's concern that Hinkle's bills were too high, Cadle also admitted that after these discussions he paid Hinkle's bills without protest or any noted reservation of right. Such payments, occurring after Daniel Cadle reviewed the invoices and even discussed some of them with Hinkle, demonstrated Cadle's assent to those amounts. This assent constituted an account stated. Absent a recognized ground for avoidance, such as fraud or mutual mistake, which the trial court found to be absent, Cadle cannot now argue that the amounts it has already paid were unreasonable. *See Tabet Lumber Co. v. Chalamidas,* 83 N.M. 172, 174, 489 P.2d 885, 887 (Ct.App.1971) (assuming that reasonableness of amount involved is a defense to account stated, defendant's agreement to the amount is evidence of its reasonableness). Accordingly, we affirm the trial court's summary judgment in favor of Hinkle on the counterclaims.

*C. Award of Attorney's Fees*

We now consider the trial court's award of attorney's fees, which the court granted to Hinkle as the prevailing party in its suit on an open account (*see supra* note 2). The court awarded attorney's fees for work related both to the prosecution of Hinkle's complaint and to its defense to Cadle's counterclaims.

### 1. Work Related to Counterclaims

■ Clearly, our reversal of the summary judgment on Hinkle's complaint requires reversal of the award of attorney's fees insofar as it allows fees for work related to prosecution of the complaint. Arguably, our affirmance of the summary judgment on the counterclaims might permit affirmance of the award of attorney's fees related to defense of the counterclaims. However, we do not believe there was any authority to award attorney's fees for defense of the counterclaims. While Section 39–2–2.1 clearly authorizes attorney's fees to Hinkle if it prevails in its action on an open account, the statute does not authorize attorney's fees for defending against Cadle's counterclaims, because those claims were resolved on the basis of an account stated. *See Tabet Lumber Co.,* 83 N.M. at 174, 489 P.2d at 887 (reversing award of attorney's fees under predecessor to § 39–2–2.1 when facts supported finding of account stated rather than open account); *see also Hiatt v. Keil,* 106 N.M. 3, 4–5, 738 P.2d 121, 122–23 (1987) (stating that fees generally should be allowed only for work on principal cause of action for which there is statutory or contractual authority for award of fees, although refusing to foreclose possibility that fees can never be awarded for defending a counterclaim); *cf. Thompson Drilling, Inc. v. Romig,* 105 N.M. 701, 706, 736 P.2d 979, 984 (1987) (In a claim for attorney's fees based on contract, "it is appropriate to distinguish between the amount of the attorney's fees incurred for prosecution of the complaint and counsel's fees for defense of a counterclaim."). Some of the work may be inextricably intertwined, making it difficult or impossible to segregate some of the time worked on the complaint from work related to the counterclaims. Nevertheless, the trial court should attempt to distinguish between the two types of work to the extent possible. Accordingly, we vacate the entire award of attorney's fees. If, on remand, Hinkle prevails on its complaint and the trial court awards a reasonable attorney's fee, the award should be limited, to the extent feasible, to work related to prosecution of the complaint.

### 2. Work Performed by In–House Attorneys

Our vacation of the attorney's fee award makes it unnecessary to consider Hinkle's argument on its cross-appeal that the trial court erred in denying the firm's in-house attorney's fees. Nevertheless, because the issue may arise again should Hinkle prevail on its complaint at trial, we address the issue to provide guidance to the trial court on remand. *See Brown v. General Ins. Co. of Am.,* 70 N.M. 46, 52, 369 P.2d 968, 972 (1962) (following reversal on one ground, court considered remaining issues so that issues would not arise again as result of second trial).

■ The trial court erred to the extent it ruled, as a matter of law, that attorneys who represent themselves cannot be awarded attorney's fees for such representation. While there may be dangers in some cases in allowing recovery of such fees, *see Weaver v. Laub,* 574 P.2d 609, 612 (Okla.1977) (discussing reasons why courts have denied attorney's fees for self-representation), there are compelling reasons for awarding them in many cases. *See id.* at 612–13 (discussing reasons why courts have allowed attorney's fees for self-representation). It would be unjust to deny fees to an attorney or law firm for self-representation when the attorney or firm, in rendering services for itself, has potentially incurred as much pecuniary loss as if it had employed outside counsel. *See id.* at 613. Additionally, it should be of no significance to the party bound to pay attorney's fees whether the award of fees is to an attorney or firm representing itself or is to retained counsel. *Id.* Therefore, if Hinkle prevails on its complaint on remand, the trial court should permit recovery of Hinkle's in-house fees to the extent that they are reasonable in amount, necessarily incurred, and not duplicative of services rendered by Hinkle's retained counsel. *Cf. id.* at 613–14 (setting forth requirements for recovery of attorney's fees by attorneys who represent themselves).

For the foregoing reasons, we reverse the summary judgment in favor of Hinkle on its complaint, affirm the summary judg-

ment in favor of Hinkle on Cadle's counterclaims, vacate the award of attorney's fees, and remand this case to the trial court for further proceedings consistent with this opinion. In light of Cadle's concession in this Court that it was incorrectly named in the complaint and that it was the client for whom Hinkle did the legal work involved in the lawsuit, the trial court on remand should enter an appropriate order correcting the name of the defendant.

IT IS SO ORDERED.

RANSOM, C.J., and FROST, J., concur.