DOUCET, Judge.
This matter arises out of the lease of two vehicles by Dr. Robert Brierty (Brierty) from McFillen Rent-A-Car, Inc. (McFillen) in Lake Charles, La.
Brierty had leased a number of cars from McFillen over the years of his residence in Lake Charles. He always dealt with E.G. McFillen (E.G.) with whom he had a good relationship. On several occasions, McFillen, acting through E.G., had allowed Brierty to terminate the lease of a vehicle before the term specified in the lease agreement. On each of those occasions Brierty had leased another vehicle from McFillen.
In August 1988, Brierty again approached McFillen through E.G. asking to terminate his existing automobile lease. He further asked that McFillen acquire and lease to him a Jaguar automobile he had found at a Houston, Texas car dealership. McFillen bought the Jaguar in August 1988 for $61,360. On September 1, 1988, McFillen leased the Jaguar to Brierty for 48 months for $1,444.10 per month.
In January 1989, McFillen bought a Cadillac automobile for $29,493. On February 1, 1989, that automobile was also leased to Brierty for 48 months for $921.46 per month.
In late 1989, Brierty began negotiations with E.G. to return the Cadillac and buy the Jaguar. In the early Fall of 1989, E.G. died. Brierty continued negotiations with E.G.’s son, Terry McFillen (Terry). Brierty and Terry both testified at trial that an agreement was reached as to the Cadillac. However, they differed as to the substance of that agreement. Brierty testified that Terry agreed that McFillen would terminate the Cadillac lease in exchange for the return of the vehicle and the payment of an additional $6,000 payable in twelve monthly installments of $600 each. Terry testified that McFillen accepted return of the Cadillac but that Brierty was to continue making full monthly lease payments until McFillen was able to sell the vehicle or find someone to assume the lease. Terry further testified that Brierty agreed to pay a loss from a previous automobile lease which was allegedly carried over into the Cadillac lease. He testified that the amount of any deficit was to be worked out after sale of the vehicle or assumption of the lease. The record reflects that Brierty made twelve monthly payments of $500 each starting on December 13, 1989. McFillen did not protest this reduction in payments. The Cadillac was sold in April 1990 for $22,000. On October 18, 1990, McFillen sent Brierty a demand letter in connection with the Cadillac lease.
As to the Jaguar, both Brierty’s and Terry’s testimony indicated that Brierty wanted to buy the Jaguar but that they were unable to agree on a price. Brierty apparently became frustrated by McFillen’s unwillingness to lower the asking price. On November 7, 1989, he brought the Jaguar back to McFil-len and turned in the keys. In January 1990, McFillen made demand on Brierty for payment under the Jaguar lease. The Jaguar was sold back to the Houston car dealership for $45,500. In January 1991, McFillen filed this suit against Brierty alleging that he had breached both leases and asked for damages under the leases. After a trial on the merits, the trial judge dismissed MeFillen’s suit at its cost. McFillen appeals.

CADILLAC LEASE

Plaintiff first argues that the trial judge erred in finding no breach of the Cadillac lease. The determination of whether a breach occurred is a question of fact. The testimony of Brierty with regard to the termination of the Cadillac lease is in conflict with that of Terry.
The trial judge apparently believed Brierty’s testimony that the lease was terminated by the parties.
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Arceneaux [v. Domingue, 365 So.2d 1330 (La.1978)], supra at 1333, Watson, v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985).
Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), on remand, 558 So.2d 1360 (La.App. 4 Cir.), writ denied, 561 So.2d 105 (La.1990).
In determining no breach occurred, the trial court found McFillen’s acceptance of the *366 twelve $500 payments was a ratification and acceptance of the proposed agreement to terminate the Cadillac lease. The trial court cited La.Civ.Code art. 1942 in support of this conclusion. This article provides:
“When, because of special circumstances, the offeree’s silence leads the offeror reasonably to believe that a contract has been formed, the offer is deemed accepted.”
In its reasons for judgment, the trial court elaborated: “The Plaintiffs witnesses acknowledged that a proposal to terminate the lease upon payment of 12 $500 payments was discussed, so it cannot be said they did not understand why the $500 payments were arriving each month. If McFillen considered the Cadillac lease to have been breached in November of 1989, why did it accept these 12 payments that were obviously made in accordance with the discussed termination offer, without protest or clarification?”
The trial court also noted that the plaintiffs attorney made demand on the payment of the Jaguar lease in January of 1990. However, no similar demand was made on the Cadillac until October of 1990, after all the $500 payments had been made.
The trial court is not alone in holding that by accepting the payments, the plaintiff agreed to a reduction in rent. The Fifth Circuit reached a similar result in O’Keefe v. Breaux Mart General Meyers, Inc., 499 So.2d 598 (La.App. 5 Cir.1986). Under these facts, we cannot hold the judge was clearly in error.
Our review of the record in this matter convinces us that there was sufficient evidence before the trial judge to support his determination that no breach of the Cadillac lease occurred. Finding no manifest error, we may not disturb the trial court’s conclusion.

JAGUAR LEASE

The plaintiff next argues that the trial judge erred in finding that the Jaguar lease was terminated due to defects. We agree. Brierty testified that he wanted to buy the Jaguar. His testimony indicates that he returned the Jaguar to McFillen because he was unable to reach an agreement with McFillen on a purchase price for the vehicle. The evidence of record does indicate that the vehicle was repaired several times. However, we find no support for the conclusion that Brierty returned the vehicle because of defects. As a result, we find that Brierty did breach the Jaguar lease.
Plaintiffs remaining assignments of error concern remedies available for breach of the lease. The Louisiana Lease of Movables Act provided McFillen with two options following the breach of the Jaguar lease.
(1) In the event of default by the lessee under a true lease, or under a financed lease entered into prior to the time Chapter 9 of the Louisiana Commercial Laws becomes effective, the lessor may do any one of the following:
(a) He may file an appropriate collection action against the lessee to recover accelerated rental payments and additional amounts that are then due and outstanding and that will become due in the future over the full base term of the lease, as provided under R.S. 9:3319.
(b) He may cancel the lease, recover possession of the leased property and recover such additional amounts and liquidated damages as may be contractually provided under the lease agreement, as provided under R.S. 9:3320 through 3328.
(2) The above remedies following the lessee’s default are not cumulative in nature. The lessor may not seek to collect accelerated rental payments under the lease and also to cancel the lease and recover possession of the leased equipment.
La.R.S. 9:3318(A). (footnote omitted)
The plaintiff argues that these provisions are not applicable to the Jaguar lease because Brierty’s unilateral decision to return the vehicle took from McFillen its option to accelerate lease payments and leave Brierty in possession of the vehicle. As a result, it argues that it should not be limited to the remedies provided by the Louisiana Lease of Movables Act. We disagree.
The Louisiana Lease of Movables Act applies to all leases of movable property located *367 in this state. La.R.S. 9:3303(A). La.R.S. 9:3304 provides for the exclusion of certain leases from the provisions of the act. However, the Jaguar lease does not fall into one of those exclusions. Further, La.R.S. 9:3303(D) provides that:
Whenever a lessor seeks to enforce remedies under any lease of movable property, no matter where consummated, following the lessee’s default and the leased property is then located in this state, the lessor shall comply with the remedy provisions under Part IV of this Chapter, notwithstanding that the lease agreement may provide that the transaction is to be governed under the laws of another state and further notwithstanding the state of the lessee’s residence, domicile, or incorporation.
(footnote omitted)
Additionally, the lease provides essentially the same options in the case of breach.'
It appears that McFillen acquiesced in Brierty’s return of the vehicles, especially since no attempt was made to return the vehicle to Brierty. Therefore, McFillen is entitled only to the remedies provided in La.R.S. 9:3318(A)(l)(b).
Alternatively, the plaintiff argues that if the Louisiana Lease of Movables Act applies, it is entitled to liquidated damages in the amount of the “loss” it sustained as a result of the breach.
La.R.S. 9:3325 provides that:
A. The lessor may commence an ordinary proceeding against the lessee, as provided in R.S. 9:3324, to recover amounts then due and owing under the lease as well as such liquidated damages as may be provided under the lease agreement. Any refundable security deposit held by the lessor may be retained and shall be credited against the lessee’s liability for liquidated damages and other amounts owed the lessor.
B. The court shall award liquidated damages to the lessor only if.it finds the amount thereof to be reasonable. If the court finds the amount of liquidated damages to be unreasonable, or if there is no such stipulation, then the court may, in its discretion, award liquidated damages to the lessor.
The Jaguar lease provides in the case of a breach that:
If the Lessee has under lease from Lessor any vehicles other than the one leased under the contract, and if the Lessee defaults on any one of such contracts, then it is agreed that all of such contracts shall be in default and the Lessor shall have all such contracts, under the same terms and conditions set forth herein.
The plaintiff argues that under this clause the default of the Jaguar lease brought the Cadillac lease into default and that they are, therefore, allowed to collect the stipulated damages specified in the Cadillac lease. We cannot agree with this interpretation.
First, we do not believe that the Cadillac lease was in existence at the time of the breach of the Jaguar lease, having been terminated by agreement of the parties. Additionally, the above cited provision can only be interpreted to mean that upon breach of this lease, any other existing lease also comes into default and may be enforced under the terms of this lease. See La.C.C. art. 2046. Therefore, the stipulated damage provision of the Cadillac lease may not be applied to the Jaguar lease.
However, the Jaguar lease contains provision for payment, in the case of breach, of an attorney’s fee of $150.00 or 25% of the total due under the lease contract, whichever is greater. This is an agreement to pay stipulated damages. Pylate v. Inabnet, 458 So.2d 1378 (La.App. 2 Cir.1984). The record reflects that Brierty made fourteen lease payments in the amount of $1,444.10 and one payment of $388.10, for total payments of $20,605.50, leaving a total of $48,711.30 due under the lease. Twenty-five percent of this amount is $12,177.83. This would be the attorney’s fee due under the contract.
However, before such an award can be made, McFillen has the burden of showing that it is reasonable. AT. & T. Information Systems, Inc. v. Smith, 593 So.2d 673 (La. App. 1 Cir.1991). The record contains no evidence with regard to the reasonableness *368 of the attorney’s fee. However, a review of the record convinces us that in light of the issues involved, the brevity of the trial, and the amount of discovery done, $12,177.83 seems to be unreasonably high. La.R.S. 9:3325(B) gives the court discretion to make its own award of liquidated damages where the amount agreed on by the parties is found to be unreasonable. In light of the factors mentioned above, we believe that $5,000 would be a reasonable attorney’s fee in this case.
As a result, we affirm the trial court’s judgment insofar as it concerns the Cadillac lease. However, we reverse the trial court’s judgment with regard to the Jaguar lease. Judgment is rendered awarding McFillen stipulated damages in the form of an attorney’s fee of $5,000.00. Costs of this appeal are to be divided equally between the parties.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.