ROBERT A. BYRNE AND WILLIAM G. LINE, APPELLANTS, V. HAUPTMAN, O'BRIEN, WOLF & LATHROP, P.C., APPELLEE.

608 N.W. 2d 208

Filed March 28, 2000. No. A-99-190.

William G. Line for appellants.

Gordon R. Hauptman for appellee.

IRWIN, Chief Judge, and CARLSON, Judge, and HOWARD, District Judge, Retired.

IRWIN, Chief Judge.
## I. INTRODUCTION
Robert A. Byrne and William G. Line (collectively the plaintiffs) appeal the order of the district court for Dodge County granting summary judgment to the defendant, Hauptman, O'Brien, Wolff & Lathrop, P.C. (Hauptman law firm), and denying the plaintiffs' motion for summary judgment. For the rea-

sons stated below, we reverse, and remand for further proceedings.

## II. FACTUAL BACKGROUND

On August 14, 1997, the plaintiffs filed a petition for declaratory judgment. According to the petition, Line had represented Byrne in a lawsuit, reached a settlement, and received a settlement draft in the amount of $1,852.70 payable to Byrne, Line, and Gordon R. Hauptman (Hauptman). Hauptman was included on the draft due to his claim of an attorney lien for services rendered to Byrne by the Hauptman law firm pursuant to a contract for legal services. In the petition, the plaintiffs contended that the contract was unenforceable and that the Hauptman law firm was not entitled to an attorney fee. The plaintiffs sought a declaratory judgment that the Hauptman law firm did not have an attorney lien or an interest in the draft.

In the Hauptman law firm's answer, it contended that its contract was enforceable and that it was entitled to the fee. It also counterclaimed, seeking a money judgment in the amount of $1,852.70 against the plaintiffs on the basis of a contract between Byrne and the Hauptman law firm or, in the alternative, on a quantum meruit theory.

Both parties moved for summary judgment. On January 13, 1999, a hearing was held on the motions. The evidence offered included the contingent fee agreement entered between Byrne and the Hauptman law firm, the notice of attorney lien, the settlement draft, and the affidavit of Hauptman.

Regarding the termination of the agreement and the subsequent payment for legal services, the contingent fee agreement provides as follows:

> In the event of termination of Attorney's representative as specified, Attorney shall have a lien for fees and expenses as are specified in this Agreement, which lien will be imposed upon any sums recovered by, for, or on behalf of Client. For purposes of computing the contingent fee to which Attorney is entitled, the applicable percentage shall be computed based upon the last settlement offer received by Attorney from defendant's representatives. If no such settlement offer has been tendered, Attorney shall be

allowed fees in an amount equivalent to his standard hourly rate for the hours expended on Client's behalf.

The agreement provided that regardless of whether there was a recovery for or on behalf of Byrne, Byrne was obligated to pay all disbursements and expenses incurred by the Hauptman law firm in pursuing Byrne's claim. The agreement also provided that the Hauptman law firm could employ assistance, including paralegals, at its discretion.

The settlement draft was issued in the amount of $1,852.70 in favor of Byrne, Line, and Hauptman. In Hauptman's affidavit, he stated that his standard billing rate on an hourly basis was $125 per hour, that he had entered a contingency fee agreement with Byrne, and that he had proceeded to represent Byrne in his personal injury lawsuit resulting from injuries sustained in an automobile collision. He stated that his representation of Byrne included

> counseling and advising of [Byrne] with regard to his ongoing medical care, knowledge and advise [sic] on the applicable law and legal issues involved in his case, wage loss and lost earning capacity issues, the general direction in which the claim should proceed, and answering any questions that [Byrne] or his family submitted. In addition, [Hauptman] corresponded with, and maintained telephone contact with Allstate Insurance Company, the third party liability carrier, and State Farm Insurance Company, [Byrne's] personal insurance carrier with regard to subrogation issues. [The Hauptman law firm] gathered medical records and reports . . . and maintained ongoing schedules of medical expenses.

According to Hauptman, he expended between 10 and 10½ hours in the representation of Byrne for the sum of $1,275 and supervised a paralegal who expended between 5 and 5½ hours at an hourly rate of $45 per hour in the sum of $246 for a total fee of $1,521. Hauptman stated that the Hauptman law firm had advanced costs to Byrne in the sum of $331.99. Hauptman further stated that after being discharged by Byrne, the Hauptman law firm served a notice of attorney lien on Byrne, Line, Allstate Insurance Company, and State Farm Insurance Company.

After taking the matter under advisement, the district court found that there was no genuine issue as to any material fact and that the Hauptman law firm was entitled to judgment as a matter of law. The court sustained the Hauptman law firm's motion for summary judgment for judgment on the counterclaim in the amount of $1,852.70 and dismissed the plaintiffs' action for declaratory judgment. Thereafter, the plaintiffs timely appealed.

## III. ASSIGNMENTS OF ERROR

In reviewing the plaintiffs' brief, we note that the plaintiffs failed to argue several of their assigned errors. See *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999) (alleged error must be specifically assigned and specifically argued in order to be considered by appellate court). We address only those errors that are assigned and argued. Therefore, we address those assigned errors regarding whether the district court erred in granting the Hauptman law firm's motion for summary judgment and in failing to grant the plaintiffs' motion for summary judgment. The plaintiffs' arguments in support of these assigned errors are set out below in particularity.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Shivvers v. American Family Ins. Co.*, 256 Neb. 159, 589 N.W.2d 129 (1999); *Willers v. Willers*, 255 Neb. 769, 587 N.W.2d 390 (1998). On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999); *Wood v. McGrath, North*, 256 Neb. 109, 589 N.W.2d 103 (1999).

Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court

obtains jurisdiction over all motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *Shivvers, supra*; *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998).

### 2. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The plaintiffs contend on appeal that the district court should have granted their motion for summary judgment. They contend in their assignments of error that they were entitled to a summary judgment because the Hauptman law firm could not seek to recover "by contract and also under quantum mer[u]it." They also appear to be arguing that the agreement was unenforceable.

#### (a) Quantum Meruit and Express Contract

■ The plaintiffs argue that it was improper for the district court to allow the Hauptman law firm to seek recovery on the basis of an express contract and under quantum meruit. However, the Nebraska Supreme Court has repeatedly held that a plaintiff is permitted to plead both express contract and quasi-contract in the same petition. See, *Professional Recruiters v. Oliver*, 235 Neb. 508, 456 N.W.2d 103 (1990); *Associated Wrecking v. Wiekhorst Bros.*, 228 Neb. 764, 424 N.W.2d 343 (1988); *Vantage Enterprises, Inc. v. Caldwell*, 196 Neb. 671, 244 N.W.2d 678 (1976). The Nebraska Supreme Court concluded that where the facts arise out of the same transaction, an action on an express contract and an action for quantum meruit constitute a single cause of action seeking recovery under alternate theories. See *Professional Recruiters, supra.*

The plaintiffs cite *Siebler Heating & Air Conditioning v. Jenson*, 212 Neb. 830, 326 N.W.2d 182 (1982), to support their argument that the Hauptman law firm could not proceed on the basis of express contract and under quantum meruit. *Siebler Heating & Air Conditioning* does not stand for this proposition. In *Siebler Heating & Air Conditioning*, the Nebraska Supreme Court held only that a plaintiff may not allege an express agreement and then seek at trial or on appeal to recover based on quantum meruit. *Siebler Heating & Air Conditioning* involved a

pleading and proof problem. In the case before us, the Hauptman law firm's pleading, however inartful, seeks recovery on the basis of the existence of an express contract with Byrne and on the basis of quantum meruit. Therefore, the problem arising in the *Siebler Heating & Air Conditioning* case is not presented in this case.

### (b) Enforceability of Agreement

The plaintiffs also argue that the agreement was unenforceable as a matter of law. According to the plaintiffs, "attorney's fees are only allowed by statute or a uniform course of conduct authorizing the allowance. They cannot be allowed by agreement in a collection matter." Brief for appellants at 7.

■ It is true that attorney fees are recoverable only where provided for by statute or when a recognized and accepted uniform course of procedure allows recovery of attorney fees. See *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998). However, the above proposition of law only applies when a party to litigation is seeking to recover attorney fees from the other party in the very case being litigated. *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999). To iterate, the above proposition of law provides when a court is authorized to award fees as costs. See *Winter v. Department of Motor Vehicles*, 257 Neb. 28, 594 N.W.2d 642 (1999).

■ The above proposition of law does not apply in the case before us. In the Hauptman law firm's counterclaim, it is seeking a judgment to recover its fee pursuant to a contract for services rendered as a result of representation of Byrne in a separate matter. It is axiomatic that an attorney and client are free to contract for reasonable attorney fees rather than statutory attorney fees. See, generally, 7 Am. Jur. 2d *Attorneys at Law* § 262 (1997). We note that attorney fee agreements are evaluated at the time of their making and must be fair, reasonable, and fully explained to the client, and are strictly construed against the attorney. *Id.* We conclude that the plaintiffs' argument is without merit.

### (c) Resolution

For the above-stated reasons, we conclude that the plaintiffs failed to prove they were entitled to a judgment in their favor as

a matter of law. Therefore, the district court properly refused to grant summary judgment in their favor.

### 3. HAUPTMAN LAW FIRM'S MOTION FOR SUMMARY JUDGMENT

█ The plaintiffs also contend that the district court erred in granting the Hauptman law firm summary judgment. They first argue that the Hauptman law firm was not entitled to summary judgment because the agreement between Byrne and the Hauptman law firm was ambiguous. In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Johnson Lakes Dev. v. Central Neb. Pub. Power,* 254 Neb. 418, 576 N.W.2d 806 (1998); *Daehnke v. Nebraska Dept.. of Soc. Servs.,* 251 Neb. 298, 557 N.W.2d 17 (1996). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Johnson Lakes Dev., supra; Daehnke, supra.* The determination of whether a contract is ambiguous is to be made on an objective basis, not by the subjective contentions of the parties suggesting opposing meanings of the disputed language. *Johnson Lakes Dev., supra; Daehnke, supra.* The terms of a contract are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. *Johnson Lakes Dev., supra; Daehnke, supra.*

Giving the terms of the agreement before us their plain and ordinary meaning, we conclude as a matter of law that the agreement between Byrne and the Hauptman law firm is not ambiguous. The agreement clearly sets forth the nature of the relationship, the claim for which the Hauptman law firm is representing Byrne, and the method by which the Hauptman law firm's fee would be determined.

█ Next, we turn to whether the Hauptman law firm sufficiently proved that it was entitled to recover on the basis of the agreement as a matter of law. A party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Battle Creek State Bank v. Preusker,* 253 Neb. 502, 571 N.W.2d 294 (1997); *Holt Cty. Sch. Dist. No. 0025 v. Dixon,* 8 Neb. App. 390, 594 N.W.2d 659 (1999).

In *Baker v. Zikas*, 176 Neb. 290, 293, 125 N.W.2d 715, 717 (1964), the Nebraska Supreme Court quoted with approval a decision of the Minnesota Supreme Court discussing the distinction between liability regarding an ordinary contract and one for legal services and the reasons therefor:

> " '[I]t is a misconception to attempt to force an agreement between an attorney and his client into the conventional modes of commercial contracts. While such a contract may have similar attributes, the agreement is, essentially, in a classification peculiar to itself. Such an agreement is permeated with the paramount relationship of attorney and client which necessarily affects the rights and duties of each. As we have seen, despite the agreement but as an incident to the relationship, a client has full power to discharge his attorney without cause at any time, being liable only in such event for the reasonable value of the services rendered.' "

The issue before the *Baker* court was whether a law firm was entitled to recover under a contingent fee agreement when the law firm's services were terminated by the client prior to any recovery. The *Baker* contract was a basic contingent fee agreement providing a contingent fee of 40 percent of the amount recovered. The *Baker* court held that the original contingent fee contract was no longer in effect following the client's termination of the law firm's services and, therefore, "the maximum reach of [the law firm's] right to fees [was] the reasonable value of its services actually rendered to date of discharge." *Id*. at 294, 125 N.W.2d at 718. The *Baker* court determined the reasonable value of the services rendered.

The agreement before us is also a contingent fee agreement. However, it is distinguishable from the *Baker* contract. The agreement before us provides a method to determine the Hauptman law firm's fee in the event that the attorney-client relationship is terminated prior to any offer of settlement or any recovery on Byrne's behalf.

Although the contract in the present case is distinguishable from that in *Baker, supra*, we conclude that Hauptman does bear the burden of proving the reasonableness of his fee as did the attorney in *Baker*. But see *Mecham v. Colby*, 156 Neb. 386, 56

N.W.2d 299 (1953) (holding that in suit to recover attorney fee where contract provided fee of $2,000, attorney need not establish reasonable value of fee). Our application of a reasonableness requirement is consistent with other jurisdictions.

 It is generally accepted that only those attorney fees which are reasonable will be allowed under a contract which provides for attorney fees, and the attorney requesting fees bears the burden of presenting sufficient evidence to establish the reasonableness of the fee. See, *Bizar & Martin v. U.S. Ice Cream Corp.*, 228 A.D.2d 588, 644 N.Y.S.2d 753 (1996); *Chicago Title & Tr. v. Chicago Title & Tr.*, 248 Ill. App. 3d 1065, 618 N.E.2d 949, 188 Ill. Dec. 379 (1993); *McFillen Rent-A-Car, Inc. v. Brierty*, 625 So. 2d 364 (La. App. 1993); *In re Foreclosure of Cooper*, 81 N.C. App. 27, 344 S.E.2d 27 (1986); *Committee on Legal Ethics v. Tatterson*, 177 W. Va. 356, 352 S.E.2d 107 (1986); *Terzis v. Estate of Whalen*, 126 N.H. 88, 489 A.2d 608 (1985); *In re Kennedy*, 472 A.2d 1317 (Del. Super. 1984), *cert. denied* 467 U.S. 1205, 104 S. Ct. 2388, 81 L. Ed. 2d 346; *Harmon v. Pugh*, 38 N.C. App. 438, 248 S.E.2d 421 (1978); *The Florida Bar v. Moriber*, 314 So. 2d 145 (Fla. 1975); *In re Stafford*, 36 Wash. 2d 108, 216 P.2d 746 (1950). But see, *Berk v. Twentynine Palms Ranchos, Inc.*, 201 Cal. App. 2d 625, 20 Cal. Rptr. 144 (1962) (where suit is brought upon contract for agreed fee, attorney is not required to prove reasonable value of services); *Mecham, supra.* When applying the above proposition to contracts for attorney fees where the contract sets forth an hourly rate for services, it has been held that the attorney must establish the reasonableness of that part of his or her fee which is not for an agreed amount, meaning that the attorney must prove the reasonableness of the number of hours expended. See, *Alexander v. Inman*, 903 S.W.2d 686 (Tenn. App. 1995); *Skidmore & Assoc. Co. v. Southerland*, 89 Ohio App. 3d 177, 623 N.E.2d 1259 (1993); *Hinkle, Cox, Eaton, Coffield & Hensley v. Cadle Co. of Ohio, Inc.*, 115 N.M. 152, 848 P.2d 1079 (1993). See, also, 7A C.J.S. *Attorney & Client* § 345 (1980); 2 Robert L. Rossi, Attorneys' Fees § 13.13 (2d ed. 1995). In cases involving summary judgment, courts have generally held that where the attorney-client contract sets forth the hourly rate, the attorney has the burden of establishing the rea-

sonableness of the time spent on the cases; that the reasonableness of the time spent is a question of fact; and that the failure to present evidence regarding the reasonableness of the time spent prevents summary judgment. See, *Climaco, Seminatore, Etc. v. Carter*, 100 Ohio App. 3d 313, 653 N.E.2d 1245 (1995); *Hinkle, Cox, Eaton, Coffield & Hensley, supra*; *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144 (Tex. App. 1986); *Jacobs v. Holston*, 70 Ohio App. 2d 55, 434 N.E.2d 738 (1980).

In support of the proposition of law that an attorney must prove the reasonableness of his or her fee, courts note that as a matter of public policy, courts pay particular attention to fee arrangements between attorneys and their clients and that the reasonableness of attorney fees is always subject to court scrutiny. See, *Bizar & Martin, supra*; *In re Cooper, supra*. Application of the proposition that an attorney must prove the reasonableness of his or her fee is supported by the above-discussed Nebraska case law recognizing that contracts between attorneys and clients are different from conventional commercial contracts. See *Baker v. Zikas*, 176 Neb. 290, 125 N.W.2d 715 (1964). We further note that Canon 2, EC 2-17, of the Code of Professional Responsibility provides that a "lawyer should not charge more than a reasonable fee."

In making our decision, we are aware that Nebraska jurisprudence provides that trial courts and appellate courts are regarded as experts on the value of legal services. See, *Junker v. Junker*, 188 Neb. 555, 198 N.W.2d 189 (1972); *Specht v. Specht*, 148 Neb. 325, 27 N.W.2d 390 (1947). Nebraska jurisprudence further provides that a trial court's determination as to the allowance of an attorney fee is largely within the discretion of the court. See *Lippincott v. Lippincott*, 152 Neb. 374, 41 N.W.2d 232 (1950). We do not read the above authority to allow a court to decide as a matter of law in a summary judgment proceeding the reasonableness of an attorney fee as provided in a contract between attorney and client where the attorney has not presented evidence to establish the reasonableness of his or her fee.

In the case before us, the contract between Byrne and the Hauptman law firm does not explicitly set forth the hourly rate or the number of hours to be expended. Under the agreement, the Hauptman law firm was entitled to a fee "in an amount

equivalent to [its] standard hourly rate for the hours expended" on Byrne's behalf. Therefore, based upon the propositions of law discussed above, we conclude that the Hauptman law firm had the burden of establishing the reasonableness of the hourly rate and the number of hours expended, both of which were not explicitly set forth in the contract.

Our review of the record shows that Hauptman's affidavit merely sets forth his standard hourly rate, the number of hours expended, and a cursory summary of services performed. Hauptman does not state in his affidavit that his standard hourly rate or the number of hours expended were reasonable. The information set forth in Hauptman's affidavit creates a factual issue regarding the reasonableness of Hauptman's fee. Therefore, we conclude that Hauptman's affidavit is insufficient to establish that the fee sought by the Hauptman law firm was reasonable as a matter of law. Because the Hauptman law firm, as movant, had the burden to prove it was entitled to judgment as a matter of law and failed to present sufficient evidence to meet this burden, we conclude that the district court erred in granting summary judgment in the Hauptman law firm's favor.

## V. CONCLUSION

In conclusion, the district court did not err in failing to grant the plaintiffs' motion for summary judgment. However, the district court erred in granting the Hauptman law firm's motion for summary judgment. On the record presented, we cannot determine as a matter of law the reasonableness of the Hauptman law firm's fee. Therefore, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.