881 P.2d 26

**LEAFLAND GROUP–II, MONTGOMERY TOWERS LIMITED PARTNERSHIP, a New Jersey partnership, Counterclaimant–Plaintiff–Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Counterclaimant–Defendant–Appellee.**

**No. 20400.**

Supreme Court of New Mexico.

Aug. 25, 1994.

Garber & Hallmark, P.C., Bruce S. Garber, Santa Fe, Beigel & Sandler, Ltd., Norman Rifkind, Alan F. Block, Chicago, IL, for appellant.

Madison, Harbour, Mroz & Puglisi, P.A., Robert J. Mroz, Albuquerque, Clausen, Miller, Gorman, Caffrey & Witous, P.A., James T. Ferrini, Stephen D. Marcus, James R. Swinehart, Imelda Terrazino, Chicago, IL, for appellee.

Compton, Coryell, Hickey & Ives, P.A., Bradford V. Coryell, Daniel Gershon, Santa Fe, Long & Levit, Donald W. Carlson, Glen R. Olson, San Francisco, CA, for amicus Ins. Environmental Litigation Assn.

## OPINION

BACA, Justice.

Counterclaimant Plaintiff–Appellant, Leafland Group–II, Montgomery Towers Limited Partnership ("Leafland"), appeals from a district court order denying its motion for summary judgment and granting summary judgment in favor of Counterclaimant Defendant–Appellee, Insurance Company of North America ("INA"). On appeal, we address whether the district court erred by deciding that there was no coverage under an insurance policy issued by INA to Leafland. We review this case pursuant to SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992), and affirm.

## I.

The following facts are undisputed. In 1983, Leafland purchased an apartment complex in Albuquerque, New Mexico. The property, known as Montgomery Towers, had been built between 1972 and 1974. After purchasing the property, Leafland procured a comprehensive insurance policy from INA. The policy provided both property coverage and liability coverage for the subject property.

In April of 1988, Leafland received a hazardous substance survey showing that asbestos had been used in the construction of Montgomery Towers. The ceilings in the apartment complex had been covered with acoustical insulation containing asbestos, and asbestos had also been used in the interior insulation of the complex's water boiler.

On February 21, 1989, Leafland notified INA by letter that it was making a claim under the insurance policy. On August 23, 1989, Leafland notified INA that it was in the process of evaluating the extent of its loss due to the presence of the asbestos in the property.

On May 30, 1989, Leafland received an appraisal report from John Howden & Associates. The report concluded that the presence of asbestos had diminished the value of Montgomery Towers by $1,750,000. INA refused to pay Leafland under the insurance policy for the property's diminished value.

On April 24, 1990, Leafland filed counterclaims against INA in a lawsuit between Leafland and Mutual Benefit Life Insurance Company. The counterclaims alleged that INA breached its insurance contract with Leafland, breached its duty to act in good faith, and violated the Unfair Insurance Practices Act, NMSA 1978, Sections 59A–16–1 to –30 (Repl.Pamp.1992 & Supp.1993).

INA filed a motion for summary judgment on September 26, 1991. In its motion, INA noted that Leafland's counterclaims alleged that it was covered under the first-party property coverage of INA's policy for "losses resulting from the installation and presence of asbestos in two buildings known as Montgomery Towers." INA sought summary judgment contending there was no coverage under the policy because: (1) The installation and presence of asbestos in the complex was not the result of a fortuitous event or external cause; (2) the mere presence of the asbestos did not constitute loss or destruction to insured property; (3) no loss or negligent installation occurred during the time the policy was in effect; (4) any cost of correcting faulty design, workmanship, material, manu-

facture, or installation was expressly excluded by the policy; and (5) Leafland did not commence its action against INA within 12 months of the claimed loss, as required under the policy.

Leafland filed a motion for summary judgment against INA on October 11, 1991. Leafland contended that it was entitled to summary judgment because the INA insurance policy provided comprehensive protection insuring the property against damage or destruction unless the cause of loss was specifically excluded. Leafland maintained that it was entitled to coverage under the policy for the diminution in value of the Montgomery Towers because "such cause of loss has not been specifically excluded in the insurance policy."

On December 13, 1991, the district court issued a letter to the parties ruling on the motions for summary judgment. The court granted INA's motion for summary judgment as to Leafland's counterclaims, and denied Leafland's motion because:

1. There is no coverage under the INA policy for the losses complained of because the result was not due to a fortuitous event or an external cause.

2. The presence of asbestos in the building was not a loss or destruction to insured property during the period the policy was in effect.

3. The installation of the asbestos containing material during the construction of the building is either faulty design, faulty material, or faulty installation and is excluded under the policy.

4. Leafland did not commence the action on the counterclaim within the "loss" period required by the policy.

On January 8, 1992, the court filed a judgment order memorializing the letter ruling. On January 21, 1992, Leafland appealed the judgment order to this Court.

## II.

On appeal, we address whether the trial court erred by deciding the issue of coverage in favor of INA and granting INA's motion for summary judgment. Summary judgment is properly granted when there are no genuine issues of material fact and the moving party demonstrates that it is entitled to judgment as a matter of law. *Hinkle, Cox, Eaton, Coffield & Hensley v. Cadle Co.*, 115 N.M. 152, 155, 848 P.2d 1079, 1082 (1993). In the instant case, Leafland contends that the trial court erred by deciding as a matter of law that the INA policy did not provide coverage for the diminution in value to Montgomery Towers. Leafland argues that the loss of value due to the presence of asbestos should be covered under the property coverage section of the policy because the policy was a comprehensive "all-risk" policy that did not specifically exclude coverage for diminution in value caused by the installation of asbestos.

■ We hold that the diminution in value of Montgomery Towers due to the presence of asbestos installed during construction was not a covered loss within the meaning of the policy's insuring clause. *Cf. State Farm Fire & Casualty Co. v. Superior Court*, 215 Cal. App.3d 1435, 264 Cal.Rptr. 269, 275 (1989) (holding under the policy language that diminution of market value is not a cause of loss but a measure of a loss caused by something else). The policy's property coverage insured Leafland's real property "against direct loss or damage from cause of loss except those listed under the Comprehensive Protection–Exclusions." Leafland can point to no event that happened during the time the policy was in effect that caused direct loss or damage to its property. Rather, Leafland is claiming coverage under the INA policy due to the discovery of an undisclosed problem with the property that was present at the time of purchase and was subsequently found to have diminished the property's value. In essence, Leafland seeks to manipulate the language of the INA policy to cover its loss in property value due to the discovery of asbestos in the building after the time of purchase.

■ An additional reason supports our holding that the INA policy does not provide coverage for the diminution in value of Montgomery Towers. "All-risks" first-party insurance coverage, such as the coverage at issue in the instant case, does not protect against losses that are certain to happen.

*See Intermetal Mexicana, S.A. v. Insurance Co. of N. Am.*, 866 F.2d 71, 77 (3rd. Cir. 1989); *Standard Structural Steel Co. v. Bethlehem Steel Corp.*, 597 F.Supp. 164, 191 (D.Conn.1984); *Chu v. Canadian Indem. Co.*, 224 Cal.App.3d 86, 274 Cal.Rptr. 20, 26 (1990); *Miller v. Boston Ins. Co.*, 420 Pa. 566, 218 A.2d 275, 277 (1966); *Glassner v. Detroit Fire and Marine Ins. Co.*, 23 Wis.2d 532, 127 N.W.2d 761, 764 (1964). A related principle is that "all-risks" insurance does not cover loss for events that occur prior to issuance of the policy. *See Nevers v. Aetna Ins. Co.*, 14 Wash.App. 906, 546 P.2d 1240, 1241 (1976) (holding that an "all-risks" policy does not cover "undisclosed events which take place prior to the effective date of coverage"). In this case, the underlying problem causing the diminution in property value—the use of asbestos in constructing the buildings—was present long before Leafland acquired the property. The presence of asbestos had, in effect, already diminished the value of the property before Leafland purchased the property and bought insurance from INA, even though the presence of asbestos remained undetected for some time after Leafland bought the property. In other words, the diminution in property value was discovered, but not caused, during the time the policy was in effect. Because the claimed loss occurred prior to the time the insurance was purchased, "the concept of risk that is inherent in all policies of insurance is lacking." *See Intermetal*, 866 F.2d at 78. Consequently, Leafland cannot claim coverage for diminution in property value under the INA policy.

■ Leafland suggests that INA's policy is ambiguous and should be construed against the insurer. We do not find the policy in this case to be ambiguous. Moreover, while insurance policies may in some circumstances be construed against the insurer, the insured must still show that its claim falls within the coverage provided by the policy. *See Miller*, 218 A.2d at 277. In this case, INA's policy does not provide coverage for diminution in property value that, in essence, resulted from events occurring prior to the issuance of the policy. The judgment of the district court is affirmed.

**IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.