BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT No. 211, Plaintiff-Appellant, v. INTERNATIONAL INSURANCE COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—98—0084

Opinion filed March 22, 1999.—Modified on denial of rehearing December 3, 1999.

598

Hager & Siegel, P.C., of Chicago (John H. Hager and Elaine K.B. Siegel, of counsel), for appellant.

Clausen Miller, P.C., of Chicago (James T. Ferrini, James R. Swinehart, and Imelda Terrazino, of counsel), for appellee.

Anderson, Kill & Olick, of Philadelphia, Pennsylvania (John A. MacDonald, of counsel), for *amicus curiae*.

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, the Board of Education of Township High School District No. 211, filed a declaratory judgment action against defendant, International Insurance Company, seeking a determination of coverage under two property insurance policies for asbestos-related property damage in three of plaintiff's high schools. The trial court granted summary judgment for defendant. Plaintiff filed this timely appeal. We reverse and remand.

Defendant sold plaintiff two property insurance policies that provided coverage from April 1, 1981, to March 31, 1986, for "all risks of physical loss or damage" to the five high schools operated by plaintiff. In 1983, plaintiff hired Arcon Associates, an architectural firm, to inspect the schools for the presence of "friable" asbestos, *i.e.*, asbestos that can be crumbled by hand. Richard Kumnick, an employee of Arcon, discovered friable asbestos in three of the schools.

Kumnick opined that the asbestos-containing building materials (ACBMs) were releasing harmful fibers into the air and that ordinary activities such as sweeping and dusting were "reentraining," or making airborne again, previously released fibers.

■ Kumnick further opined that the Asbestos Abatement Act (105 ILCS 105/1 *et seq.* (West 1994)) required the removal of the ACBMs. The Asbestos Abatement Act provides for "the identification, containment or removal of those asbestos materials that constitute a significant health hazard *** to students, school personnel, parents and visitors to such schools." 105 ILCS 105/2 (West 1994).

Plaintiff notified Kumnick that it had decided to remove all ACBMs from its schools. According to Kumnick, plaintiff incurred over $2.6 million in asbestos removal and restoration costs between June 1984 and July 1986. To date, plaintiff has incurred about $18 million in asbestos removal and restoration costs.

Plaintiff made claim upon defendant for coverage under the two property insurance policies. Defendant denied the claim.

Plaintiff filed this declaratory judgment action against defendant, seeking a declaration that the policies cover the damage resulting from the presence of friable asbestos and toxic asbestos fibers in its schools. The trial court granted summary judgment for defendant, finding that the presence of asbestos in the school buildings did not constitute property damage covered by the policies. Plaintiff filed this timely appeal.

■ Summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, the pleadings, depositions and admissions on file reveal that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998). The standard of review in cases involving summary judgment is *de novo. Ragan*, 183 Ill. 2d at 349.

■ In determining whether summary judgment for defendant is proper, the two property insurance policies at issue must be construed. The construction of insurance policies is a matter of law subject to *de novo* review. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80 (1997). The construction of the policies is to give effect to the intent of the parties as expressed in their agreement. *American States*, 177 Ill. 2d at 479. If the terms of the policies are unambiguous, they must be given their plain and ordinary meaning. *American States*, 177 Ill. 2d at 479. If the terms of the policies are capable of more than one meaning, they are construed strictly against the insurer. *American States*, 177 Ill. 2d at 479.

■ The two policies provide, in part, that defendant agrees to

indemnify plaintiff for "all risks of physical loss or damage to all real or personal property of every kind and description wherever located occurring during the period of this insurance."

Defendant contends that the presence of friable ACBMs and asbestos fibers in plaintiff's schools does not constitute physical loss or damage to property covered under the property insurance policies at issue. In support, defendant cites a New Mexico Supreme Court case, *Leafland Group-II, Montgomery Towers Ltd. Partnership v. Insurance Co.*, 118 N.M. 281, 881 P.2d 26 (1994). Leafland purchased an apartment complex, Montgomery Towers, in 1983. After purchasing the property, Leafland bought a comprehensive insurance policy from Insurance Company of North America (INA) that provided both property coverage and liability coverage for the subject property. *Leafland*, 118 N.M. at 282, 881 P.2d at 27. Leafland subsequently discovered that asbestos had been used in the construction of Montgomery Towers and that the presence of the asbestos had diminished the value of the property by $1,750,000. *Leafland*, 118 N.M. at 282, 881 P.2d at 27. Leafland made a claim under the insurance policy, but INA refused to pay for the property's diminished value. *Leafland*, 118 N.M. at 282, 881 P.2d at 27.

The New Mexico Supreme Court held that the policy, which insured against "direct loss or damage," did not cover the diminution in value of the apartment complex caused by the presence of asbestos installed during construction. The court stated that there was "no event that happened during the time the policy was in effect that caused direct loss or damage" to the property. *Leafland*, 118 N.M. at 282, 881 P.2d at 28.

*Leafland* is factually inapposite to the present case because the all-risk policies at issue here contain no language limiting their coverage to "direct loss or damage" to plaintiff's buildings. Further, unlike Leafland, which sought coverage for the diminution in value of the property that occurred prior to the policy period, plaintiff here seeks coverage for the removal of ACBMs in its buildings that were in a friable condition and emitting toxic fibers during the policy period.

Our supreme court has spoken to this issue in *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64 (1991). In *Wilkin*, school districts and building owners sued Wilkin and others of the "asbestos industry." *Wilkin*, 144 Ill. 2d at 69. The plaintiffs prayed for reimbursement of incurred asbestos abatement costs. *Wilkin*, 144 Ill. 2d at 69. Wilkin sought defense and indemnification from United States Fidelity & Guaranty Co. (USF&G), which had issued a comprehensive general liability policy to Wilkin. *Wilkin*, 144 Ill. 2d at 69-70. Under that policy, USF&G agreed to defend and provide cover-

age for Wilkin in any action seeking damages on account of "property damage" caused by an "occurrence." *Wilkin*, 144 Ill. 2d at 70. USF&G's policy defined property damage as:

> "1) physical injury to or destruction of tangible property, which occurs during the policy period, including the loss of use thereof at any time resulting therefrom." *Wilkin*, 144 Ill. 2d at 75.

USF&G then brought an action for declaratory judgment that it had no duty to defend or indemnify Wilkin under that policy. *Wilkin*, 144 Ill. 2d at 70. USF&G argued that the underlying complaints did not allege physical damage to tangible property and that the presence of asbestos-containing products resulted only in economic loss in diminished market values of the buildings. *Wilkin*, 144 Ill. 2d at 75.

After the trial court granted summary judgment for USF&G and the appellate court reversed (*Wilkin*, 144 Ill. 2d at 72), our supreme court held that asbestos fiber contamination constitutes physical injury to tangible property, including buildings and their contents, and further noted that it had so held in an earlier case. *Wilkin*, 144 Ill. 2d at 75, citing *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428 (1989). *Wilkin* quoted from its holding in *A, C & S*:

> " '[I]t would be incongruous to argue there is no damage to other property when a harmful element exists throughout a building or an area of a building which by law must be corrected ***. The view that asbestos fibers may contaminate a building sufficiently to allege damage to property has been recently adopted in a number of cases. ***
>
> * * *
>
> *** The essence of the allegations [of the complaints] is that the buildings have been contaminated by asbestos to the point where corrective action, under the law, must be taken. Thus, the buildings have been damaged.' " *Wilkin*, 144 Ill. 2d at 75-76, quoting *A, C & S*, 131 Ill. 2d at 446-49.

Here, defendant contends *Wilkin* is distinguishable because *Wilkin* involved a third-party liability policy providing coverage for damage to the property of others, whereas this case involves first-party property insurance policies providing coverage for damage to one's own property. Defendant cites California case law holding that a third-party liability policy generally insures against a broader spectrum of risk than a first-party property insurance policy. See *Garvey v. State Farm Fire & Casualty Co.*, 48 Cal. 3d 395, 770 P.2d 704, 257 Cal. Rptr. 292 (1989); *Montrose Chemical Corp. v. Admiral Insurance Co.*, 10 Cal. 4th 645, 897 P.2d 1, 42 Cal. Rptr. 2d 324 (1995). Defendant submits that the term "property damage," as used in the third-party liability policy in *Wilkin*, is so broad that it does not necessarily require *physical* loss

or damage to property as is required under the first-party property insurance policies here.

A close examination of *Wilkin* is instructive and belies defendant's argument. "Property damage" in the liability policy in *Wilkin* is defined as *"physical* injury to or destruction of tangible property." (Emphasis added.) *Wilkin*, 144 Ill. 2d at 75. The *Wilkin* court held that asbestos fiber contamination, if proved, constitutes physical injury to property and therefore meets the liability policy's definition of property damage. *Wilkin*, 144 Ill. 2d at 75-76; accord *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598 (1994). Here, the property insurance policies provide a definition of property damage virtually identical to the one used in *Wilkin*: "physical loss or damage to all real *** property." Pursuant to *Wilkin*, the asbestos fiber contamination in plaintiff's schools meets such a definition of property damage. Thus, *Wilkin* applies here to defeat summary judgment for defendant.

Next, defendant contends plaintiff failed to provide sufficient "factual proof" of asbestos fiber contamination to withstand its motion for summary judgment. We disagree. The nonmoving party in a summary judgment case is not required to prove his case but must only present some factual basis to support his claim. *Prairie v. University of Chicago Hospitals*, 298 Ill. App. 3d 316, 326 (1998). Plaintiff presented such a factual basis through the affidavit of Richard Kumnick, who stated that he had examined plaintiff's high schools and discovered friable ACBMs that were releasing asbestos fibers into the air. Kumnick further opined that the asbestos fibers from the friable ACBMs were recirculating throughout the buildings even into areas not containing asbestos installations. In Kumnick's opinion, the friable ACBMs constituted a "significant health hazard to occupants, and therefore had to be removed *** pursuant to the Illinois Asbestos Abatement Act." Kumnick's testimony was sufficient to provide a factual basis to support plaintiff's claim of asbestos fiber contamination in its schools.

Of note, during oral argument on this case, defendant argued that plaintiff had engaged in *wholesale* removal of asbestos, even asbestos that was not friable or releasing toxic fibers. Defendant contended that, at most, its policies provide coverage only for the removal of friable asbestos and resulting fibers. *Wilkin, A, C & S* and *Gypsum* define asbestos property damage as asbestos materials actively releasing toxic fibers, or asbestos materials posing a risk of future fiber release through age, friability, or repeated contact. Thus, the policies at issue here, which indemnify plaintiff for "all risks of physical loss or damage to all real or personal property," would not cover the removal of

asbestos or ACBMs that were not releasing toxic fibers or that were not at any risk for future fiber release. The issue of whether plaintiff removed such noncovered asbestos is a factual one inappropriate for resolution by summary judgment.

Next, defendant contends coverage was never triggered because no physical loss or damage occurred during the period the policies were in effect. In support, defendant again cites *Leafland*. *Leafland* held that the use of asbestos in the construction of the subject property had caused that property to diminish in value long before Leafland purchased the property or procured the insurance policy. In other words, the diminution in property value was discovered, but not caused, during the time the policy was in effect. *Leafland*, 118 N.M. at 284, 881 P.2d at 29. Therefore, the New Mexico Supreme Court held that Leafland could not claim coverage for diminution in property value under the policy. *Leafland*, 118 N.M. at 284, 881 P.2d at 29.

Here, defendant asserts that the use of the asbestos similarly predates the issuance of the policies and that, pursuant to *Leafland*, plaintiff cannot claim coverage under the policies.

We disagree. Leafland sought coverage for the diminution in value that occurred prior to the time the policy was in effect, whereas in the present case plaintiff seeks coverage for asbestos removal costs allegedly incurred during the policy period. Therefore, *Leafland* is factually inapposite. We find more persuasive an Illinois case, *Gypsum*, which held:

> "Property damage \*\*\*, whether from the presence of airborne [asbestos] fibers or settled fibers subject to reentrainment, occurs over a span of time and cannot be linked to or confined to different policy periods. The difficulty in determining precisely when the damage occurred or in following its progress or proliferation is further exacerbated by the interchangeable nature of the fibers and that their release occurs on a continuing basis. The precise amount of airborne released fibers and grounded fibers that could be reentrained changes on a continuing basis. The burden of proving exactly when property damage occurred would be virtually impossible." *Gypsum*, 268 Ill. App. 3d at 645-46.

*Gypsum* held that "claims seeking coverage for property damage caused by asbestos fiber release are prototypes for the appropriate application of the equitable continuous trigger." *Gypsum*, 268 Ill. App. 3d at 645. Under the equitable continuous trigger:

> " '[P]roperty damage is deemed to have "occurred" continuously for a fixed period (the "trigger period"), and every insurer on the risk at any time during that trigger period is jointly and severally liable to the extent of their policy limits, the entire loss being equitably allocated among the insurers. [Citations.]' " *Gypsum*, 268 Ill.

App. 3d at 644, quoting *Sentinel Insurance Co. v. First Insurance Co. of Hawai'i, Ltd.*, 76 Haw. 277, 298, 875 P.2d 894, 915 (1994).

In the present case, the trigger period for coverage purposes begins with the installation of the friable, fiber-releasing asbestos materials and ends when those asbestos materials are removed or contained. See *Gypsum*, 268 Ill. App. 3d at 645-46. Plaintiff has established, through the affidavit of Richard Kumnick, that friable, fiber-releasing ACBMs were present in its schools since at least 1983. The property insurance policies were in effect at that time; therefore, coverage was triggered.

Defendant argues that it should not have to pay for asbestos removal costs incurred after the policies expired. Defendant's argument is flawed, as the proper focus of the analysis should be on the trigger period, not the policy period. Under the equitable continuous trigger, the asbestos property damage is deemed an ongoing, continuous process triggering every policy, including defendant's, in effect during the period beginning with the installation of the friable, fiber-releasing asbestos materials and ending when those materials are removed or contained.

We recognize that *Gypsum* involved the construction of third-party liability insurance policies, whereas the present case involves the construction of first-party property insurance policies. However, as discussed above, the liability policies in *Gypsum* and the property insurance policies here each provide coverage for asbestos-related property damage occurring during the respective policy periods. *Gypsum* adopted the equitable continuous trigger to determine the timing of the asbestos damage for coverage purposes; we find the *Gypsum* analysis compelling and applicable in the present case.

Finally, plaintiff contends summary judgment for defendant is inappropriate because coverage of asbestos removal costs is provided under the additional coverage clauses in the policies, specifically, the ordinance deficiency clause, the debris removal clause, the removal clause, and the expense to reduce or prevent loss clause. In its order granting summary judgment for defendant, the trial court did not address whether coverage for plaintiff's asbestos removal costs is provided under the additional coverage clauses cited above. We need not address this issue here, since we are reversing the trial court's order granting summary judgment for defendant and remanding for further proceedings.

For the foregoing reasons, we reverse the trial court's order grant-

ing summary judgment for defendant and remand for further proceedings.

Reversed and remanded.

TULLY and O'MARA FROSSARD, JJ., concur.